THEODOR BORUP and CLEMENT H. BEAULIEU, Partners, &c., as
   BORUP & Co., Appellants, against JOHN NININGER, Respond-
ent.

#### APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

The payee of a note left it with a banking firm in St. Paul for collection; they forwarded the
note to their correspondents at St. Anthony, where the maker lived, who caused the same to be
protested for non-payment, but failed to notify the endorser of the dishonor of the note, and he
was thereby discharged. After this the payee transferred the note to a third party, and after
passing through several hands he again became the owner thereof, and brought his action against
the bankers for their negligence in failing to fix the liability of the endorser. While in the hands
of third parties, the security (mortgage) of the note was exhausted, and the maker became insol-
vent. *Held,* That the mere transfer of the note and mortgage did not carry with it the cause of
action against the bankers. The measure of damages in such an action is, *prima facie,* the face
of the note. The fact that the Plaintiff bought the note at a discount, will not affect the measure
of damages. The Plaintiff must make out the insolvency of the maker and solvency of the en-
dorser, and the Defendant may mitigate the damages by showing either the solvency of the maker
or insolvency of the endorser, or that the paper was partially or wholly secured, or any other fact
that will lessen the actual loss of the Plaintiff. The Plaintiff may show that the endorser was sol-
vent at any time from the maturity of the note to the commencement of the action.

Where bankers at St. Paul receive paper for collection payable at St. Anthony, and were noti-
fied that there were two persons of the same name of the endorser, the one residing at St. Paul,
and the other at Nininger, and that the latter was the endorser, (the fact not appearing from the
note,) they should have conveyed that information to their agents at St. Anthony, to whom they
sent the note for collection. No custom could absolve them from this duty.

In an action against an endorser, he cannot show any previous parol agreement that his con-
tract was to be different from what it appears to be upon the note.

The facts charged by the Plaintiff are substantially, that
one R. L. Joice, residing near St. Anthony, Minnesota, on
May 4, 1851, for value made and delivered to Samuel S.
Eaton, of Nininger, Minnesota, the payee, his promissory
note for $3,202.16, payable on or before May 4, 1858, and that
Eaton for value transferred the note by endorsement and de-
l⋯ ⋅ y to the Plaintiff before maturity.

   ıat Defendants were bankers at St. Paul, and the Plain-
tiï , before the maturity of the note, delivered it to them for
collection in the usual course of business, and the Defendants
undertook to demand payment, and in the event of non-pay-
ment to protest and notify the endorser in the due course of
business, in such manner as to charge him; that the Defen-
dants did not perform their undertaking, and the endorser was
discharged by their laches; that the maker of the note was
insolvent and the endorser solvent; that Plaintiff is the
owner and holder of the note, and concludes with a prayer

for judgment for the amount of the note and interest from maturity.

The answer makes an issue upon the allegations of no diligence in the complaint ; upon the insolvency of the maker, and the solvency of the endorser of the note, and also upon the ownership of the note and the pretended damage.

The answer next proceeds to allege that the note was made as stated by Plaintiff, and was secured by a mortgage executed, &c., on the same day by the maker to the payee of the note ; that about the 14th day of August, 1857, the note and mortgage were transferred to Nininger by Eaton, and that for a consideration passing from Eaton to Nininger, it was agreed that Eaton should not be liable as endorser, and that the endorsement was made simply to pass the legal title to the note ; that Nininger discounted the note at two per cent. per month, and that the mortgaged premises were worth more than $4,000 ; that the mortgage was foreclosed, and the mortgaged premises bought by Plaintiff for less than their value.

The answer asks to *recoup* the value of the mortgaged lands.

The answer proceeds to aver that the note was payable at St. Anthony, Defendants residing and doing business at St. Paul ; that there was a Samuel S. Eaton at St. Paul ; that it was a general custom of all bankers, and the custom of Defendants, as the Plaintiff well knew, to transmit paper of the character, described to correspondents of Defendants at St. Anthony, to make the necessary demand, and give the notice, &c. ; that Defendants were ignorant of any Eaton but the one in St. Paul ; that Plaintiff knew, but gave no information ; that Defendants in due season, forwarded the note to their correspondents at St. Anthony, Messrs. Graves, Town & Co., responsible bankers of that city, with instructions to make demand and give notice ; that payment was duly demanded by a notary public, to whom the note was for that purpose delivered by Defendants' said correspondents ; that notice was served, but upon *what* Eaton Defendants are ignorant ; that the Defendants conducted in all things with fidelity and diligence.

The reply alleges that the mortgage referred to in the an-

swer was given to secure the note mentioned in the complaint and another between the same parties for $3,298.20, due after the one described in the complaint, to wit, on or before the first day of August, 1858.

The assignment of the mortgage is admitted, but the agreement characterizing the endorsement is denied. The Plaintiff also denies any knowledge of the value of the lands. He admits a foreclosure of the mortgage and sale of the lands, December 6th, 1859, (before this suit,) and purchase by him for $1,500, and avers that $1,475, proceeds of sale, less costs, was credited on the last note, i. e., the one last due.

The reply also denies knowledge of usage of bankers, &c., and avers notice to Defendants of residence of Eaton. Denies diligence of Defendants, and also irresponsibility of Eaton.

Upon the trial, Mr. Nininger, the Plaintiff, stated that the maker of the note, before and at its maturity, lived near St. Anthony, about nine miles from St. Paul, and the endorser at Nininger, about twenty miles from St. Paul, and he left it with Defendants in April, 1858, for collection.

Folio 3.   Question—First Exception—Had you any conversation with Doctor Borup immediately after you left the note ?

Objected to as being after the note was left.

Witness stated substantially that he informed Dr. Borup where Eaton the endorser lived.

Witness further testified to facts tending to establish the solvency of Eaton ; that he was the holder and owner of the note at maturity, and was then, and that no part of it had been paid.

Cross-examined—Folio 7—Witness stated that in 1858, in summer, the note and mortgage was transferred to Mrs. Agnes Saunders, who became soon after Mrs. Kemp, who held the note and mortgage until the spring of 1859 ; the transfer was in writing ; witness had possession of note ; the mortgage was transferred to secure witness's debt.   He had a power of attorney, by virtue of which in the spring of 1859, he transferred note and mortgage to his own wife, who had the mortgage foreclosed by advertisement and property sold Decem-

ber 6th, 1859. Transfer to Mrs. Nininger was in writing. Mrs. Nininger, my wife, transferred the note back to me directly, about a week before this suit was brought.

Folio 10. Second Exception—Question by Defendant's Counsel—Was the assignment of this note and mortgage to you in reference to any antecedent or contemporaneous agreement with Eaton?

Objected to by Plaintiff's counsel as not a cross-examination, and as irrelevant.

Third Exception—Samuel S. Eaton was sworn for the Plaintiff, and testified, amongst other things tending to show his solvency, in answer to this question, "What were you able to pay on the 7th day of May, 1858? Were you solvent or insolvent?" (The Court having previously excluded a question referring to his solvency after May 7th, 1858); "that he did not own a mill in 1858; that he commenced the foundation about the 13th May, 1858, and completed the mill January 16th, 1859." The Counsel for the Plaintiff then proposed the following questions?

Question—What was the cost of finishing and completing the mill?

Objected to by the Defendant's Counsel as immaterial.

Question by Plaintiff—What was the value of the mill? Objected to as before.

Answer—The mill cost me within a few dollars of $15,000.

Fourth Exception—The witness was allowed to testify under Defendants' objection of immateriality; that he knew Doctor Borup before he went into the banking business in 1852 and '53, in St. Paul; that he built a mill for him, and to answer under the same objection, this question : "Have you conversed with Dr. Borup about building your mill?" I presume I did.

Fifth Exception—The witness also stated in chief, under objection, that he had never received protest of the note described, that he was payee of the note and endorsed it.

The witness was asked upon his cross-examination :

What was the inducement, and circumstances and facts under which the endorsement was made by you on that note?

Objected to by the Plaintiff, as no cross-examination, and

that as affirmative evidence it cannot be inquired into by the parties to this action.   The Court excluded the evidence, on the grounds that it was not a cross-examination, and that the consideration between Eaton and Nininger could not be inquired into.   The Defendants excepted.

Sixth Exception—Question by Defendant.—Did you ever receive notice of the protest of this note, from the Plaintiff, that the notice had been served upon S. S. Eaton, of St. Paul, your agent ?   Objected to by Plaintiff, and objection sustained.

Seventh Exception—George H. Murray was sworn for the Plaintiff, and after stating that the mill was finished in January, 1859, was asked : " What was the value of the mill at that time ?"

The Defendant objected on the ground that the question of solvency must be determined at the maturity of the note. The Court overruled the objection and the Defendant excepted. The witness answered.

After some further testimony, immaterial to the *exceptions*, the Plaintiff rested his case, and the Defendants' counsel moved for a nonsuit or a dismissal of the action on the ground that it appeared that another party was the party in interest when the action was brought.   The Court denied the motion, and the Defendants excepted.

Ninth Exception—The Defendants offered in evidence the papers marked Schedule D in case, and contained between folios 168 and 238 thereof. The Plaintiff objected. The Court received instruments down to six inclusive, and rejected the remainder.   Defendants excepted to the exclusion.

Paper No. 1, contains the mortgage from Joice and wife to secure the notes.   Paper No. 2, contains transfer of mortgage and notes, dated August 14, 1857, from Eaton to Nininger. Paper No. 3, contains transfer of notes and mortgage and money, due, and to grow due, with interest, from Nininger to Mrs. Agnes Saunders, dated July 5th, 1858.   Paper No. 4, contains assignment, dated September 18th, 1858, of same contents as No. 3, from Mrs. Agnes Saunders, by John Nininger, her attorney in fact, to Catherine Nininger, wife of John Nininger.   Paper No. 5, dated 13th September, 1859, is as-

signment of same matter from Agnes Kemp, late Saunders, by John Nininger, her attorney in fact, to Catharine Nininger, wife of John Nininger. Paper No. 6, is a transfer dated October 12th, 1859, from Agnes Kemp, late Saunders, by John Nininger, her attorney in fact, to Catharine Nininger, wife of John Nininger, of same matters. Paper No. 7, contains foreclosure notices of sale under mortgage, affidavit of publication, &c., and of sale by Sheriff. Paper No. 8, contains Sheriff's certificate of sale, with statement of manner and time of sale, amount bid, purchaser, &c., and record of filing, &c., consideration of transfers expressed therein, and being the amount of two notes.

John Nininger examined for Defendants—Stated that he had received but two powers of attorney from Mrs. Saunders, one before and one after her marriage to Kemp. They were identified and received in evidence under Plaintiff's objection. The first bears date July 13th, 1859, confers power to assign any mortgage or judgment then in her name, &c., recorded from Agnes Kemp. The other dated August 31st, 1857, from Agnes Saunders, and confers power to convey real estate in Nininger ; both acknowledged and recorded in due form.

Tenth Exception—The Defendants next identified a letter from the attorney of Mrs. C. Nininger to the Defendants, dated December 3d, 1859, and offered it in evidence. The letter notified Defendants that the mortgage given to secure the *two* notes, describing them and stating that one of them was left with Defendants for protest, would be foreclosed, if not paid, by the sale of the mortgaged premises, December 6th, 1859.

A witness, Mr. Simonton, stated that the letter was written at his direction, by his clerk, as attorney for Mrs. Nininger, and that the note and mortgage had been left with him by Plaintiff, to foreclose for Mrs. Nininger.

The Plaintiff objected that the letter was irrelevant. The Court sustained the objection, and the Defendants excepted.

John R. Livingston was sworn generally as to the facts occurring at the time the note was left—was cashier ; note was left with him ; no instructions were given ; did not know residence of endorser ; knew Samuel S.

Eaton, of this place ; testified that the note was sent same day it was received to Defendants' correspondents at St. Anthony, Graves, Town & Co., who were responsible, &c., with instructions to collect, and protest, and notify if not paid.

Eleventh Exception—Question—What was your custom in reference to instructions given you as to notes left with you for collection ? The Plaintiff objected as to the custom of a bank unless universal. The Court sustained the objection, and the Defendants excepted. The witness afterwards stated that it was the general custom of the banks when paper payable at a place different from the place of business of the bankers, was left for collection, to transmit to correspondents at the place of payment.

The witness went on in detail of other facts tending to establish diligence of the Defendants, and that no notice was given of Eaton's residence either to witness or Dr. Borup.

R. B. Graves sworn for Defendant—Stated that Graves, Town & Co., were correspondents of Defendants at St. Anthony in good standing (which was admitted). The note was shown him which had been offered in evidence by Plaintiff ; testified to receipt of note, and that it was duly handed to a responsible notary with instructions to demand and protest.

Charles H. Oakes testified to facts tending to show that Mr. Nininger was mistaken in stating that he had talked with Mr. Borup about residence of Eaton.

J. J. Knox testified substantially that it was the universal custom of bankers to do as Defendants had done here.

Twelfth Exception—Samuel S. Eaton, the endorser, was called as a witness, and stated that he endorsed the note described, and was then asked this question—

Question—State what were the circumstances and inducements and facts under which the endorsement was made by you upon that note?

The Plaintiff objects to the evidence because it is inadmissible, and cannot be inquired into between the parties to this action by parol. The objection was sustained. The Defendants excepted.

An amendment was here allowed to the answer making it

more specific and certain in its allegations as to the agreement between Eaton the endorser, and Nininger.

The Defendants offer now to prove by the witness that it was agreed between the Plaintiff and the endorser at the time the endorsement was made, that the endorser should not be liable on his endorsement as such ; that the Plaintiff was to look to the maker of the note and the security of the mortgage, and the endorsement was only made to pass the legal title to the note.

The Plaintiff objected on the ground that the evidence is irrelevant and inadmissible, and further, because parol evidence is inadmissible to vary or defeat the legal contract of the endorsement, and because the Defendants are not in a position in this suit to enquire into the contract, the liability of the endorser to the endorsee, or to inquire into the consideration passing between them.

The objection was sustained, and the Defendants excepted.

Thirteenth Exception—The Defendants then offered to show that cotemporaneous with the endorsement, Plaintiff signed a memorandum agreeing to buy the note at a discount of two per cent. per month, and that the endorsement was made pursuant thereto, to be followed by testimony in former offer ; objected to as irrelevant and inadmissible, as above stated, and also as no written memorandum is produced, and parol evidence is inadmissible to prove its contents. Objection sustained. Defendants except.

Fourteenth Exception—The Defendants offer to show the value of the land mortgaged at the time of the transfer from Eaton to Nininger, and separately at the date of the sale.

Plaintiff objects as immaterial and inadmissible. Court sustained the objection, and Defendants excepted.

Fifteenth Exception—The Plaintiff called Robert F. Fisk, who testified to a conversation tending to contradict witness Livingston, under the objection that he must be directed to the precise time stated by witness Livingston. Court overruled the objection, and Defendants excepted.

Sixteenth Exception—The Plaintiff asked the Court to charge the jury—

"If the endorser of the note was discharged from liability

upon it for want of notice at the time of its maturity, the damage (if any) then accrued to the Plaintiff, and became a subsisting cause of action in his favor entirely independent of the liability of the parties on the note."

The Court charged the jury that this was correct, understanding it to refer solely to the cause of action, and to the amount of damage.   The note could still be put in suit against the parties to it.   Defendants excepted.

Seventeenth Exception—Plaintiff asked Court to charge, secondly—

" If Eaton was previously discharged for want of notice, the assignment to Mrs. Saunders only transferred the debt against Joice, the maker, and the mortgage security."

The Court instructed the jury that this request was correct so far as it related to the cause of action accruing to the Plaintiff for the alleged negligence of the Defendants.   If however the note was transferred, and the pleadings are in a condition to admit the fact to be shown, and the Defendants are entitled to the benefit of the fact, it would affect the question of damage.   In such case no more than nominal damages could be recovered.   The Defendants excepted.

Eighteenth Exception—The Plaintiff asked the Court to charge, thirdly—

" There is no evidence in the case showing that the Plaintiff has assigned or transferred his claim or cause of action (if any exists) against the Defendants for damages stated in the complaint."

The Court charged this request to be correct so far as it related to the cause of action.   Defendants excepted.

Nineteenth Exception—The Plaintiff requested the Court to charge fifthly, that—

"The note being a personal [chattel and acquired before coverture, and therefore the separate property of Mrs. Saunders, might be legally transferred by delivery after coverture."

Court so charged.   Defendants objected.

Twentieth Exception—The Plaintiff requested the Court to charge, sixthly—.

" That the right of married women to take and hold separate property in their own right under the Statute also implies

and gives them right to sell and dispose of the same, with the consent of the husband, which consent may be presumed in law, of personal chattels, which may be transferred by mere delivery, without any other act or deed."

The Court so charged. Defendants excepted.

Twenty-first Exception—The Plaintiff asked the Court to charge, thirteenthly—

"If the holder of the note and mortgage had not the right to elect and [apply the whole proceeds of the sales upon one note, and it remains open for the Court to direct how such proceeds shall be applied, they must be applied ratably upon the whole debt secured by the mortgage, upon both notes *pro rata* according to their respective amounts, unless there was shown some special agreement between the parties to the contrary."

The Defendants excepted.

Twenty-second Exception—The Plaintiff eightly, ninthly, and tenthly, asked the Court to charge—

Eighthly—Upon the delivery of the note to the Defendants' bank for collection there was an understanding and implied promise on their part, in case the note was not paid at maturity, to give reasonable and proper notice of the non-payment to the endorser to charge him with liability upon it, and if they neglected to give such notice, they are liable to the Plaintiff for the amount of damage he has sustained by reason of such omission or neglect.

Tenthly—When a bank receives a negotiable note before maturity for collection, they are bound to take all the necessary measures to charge the endorsers, upon the default of the maker, and they are responsible for a neglect or omission to perform that duty.

The Court charged so, qualifying, "It was the duty of the Defendants to take prompt and proper measures, and to use all necessary and reasonable diligence to give due notice to endorser. What due diligence is, depends to some extent upon the facts and circumstances of each case." Defendants excepted.

Twenty-third Exception—The Counsel for the Defendants requested the Court to charge the jury—

1st. The Plaintiff in this action cannot recover unless he establishes by evidence satisfactory to the jury, that he is the owner of the promissory note described in the complaint.

2d. If the jury find from the evidence that the note described in the complaint was on or about the 5th day of July, or in the month of July, transferred to Agnes Saunders, and that afterwards an instrument or instruments were executed, purporting to transfer the said note to John Nininger, as Attorney in fact of Agnes Saunders to Catharine Nininger, and that the only authority of John Nininger was a power of Attorney to convey real estate, the said John Nininger had no authority to make such transfer, and the note was not passed to Catherine Nininger.

The Court declined so to charge, and did charge as follows:

"The Defendants are not in a position to attack Plaintiff's title to the note, it being in his possession and first in evidence, on account of technical defects in the mode by which the title has been attempted to be proved. If the parties to the transfer do not, and would not be allowed to claim anything on acount of alleged defects, and there is no fraud imputed, the Defendants cannot object to the Plaintiff's ownership of the note."

"The transfer of the note must not be confounded with the assignment of the mortgage. The instruction as to the conveyance of real estate or of any interest therein as a mortgage is correct, but not as applied to the note, which passed by delivery. No Power of Attorney was necessary to enable the Plaintiff to transfer the note. If Mrs. Saunders instructed him to sell or transfer the note, and gave him possession of it for that purpose, it was sufficient."

To all and every of this, the refusal and the charge, the Defendants excepted.

Twenty-fourth Exception—The Defendants (No. 4) requested the Court to charge—

"If the jury find from the evidence that the note described in the complaint was before the commencement of this action transferred to Catherine Nininger, the wife at that time of the Plaintiff, and that the Plaintiff obtained the note by a transfer thereof directly to him from s wife, they must find that

66

he was not the owner of the said note, and this action cannot be maintained in his name."

The Court declined so to charge and did charge:

"I think in this State a married woman can legally transfer personal property, choses in action, &c., by delivery to any one with the consent of her husband, and his consent will be presumed in the absence of evidence to the contrary. Also, she may transfer to her husband when no evidence of coercion or fraud appears. At all events, it is only the wife or her creditors who can attack the regularity of the transfer on account of coercion or fraud, unless in such a case as this, that was in issue, to which testimony on this point could be directed."

To the refusal and charge and every part of it, Defendants excepted.

Twenty-fifth Exception—The Defendants (No. 5) requested the Court to charge the jury—

"If the jury find that the note described in the complaint was payable at St. Anthony, a place distant from the place of business of the Defendants, and that in their usual course of business, and in due time, the Defendants transmitted the said note to their correspondents at St. Anthony with the same instructions that they received from the Plaintiff; that the said correspondents were careful and competent men and delivered the said note in due time to a reliable Notary Public to make the demand of payment, and to protest and serve the usual and requisite notice, the Defendants are not liable in this action for any acts or omissions of the said correspondents or the said Notary Public, unless the Plaintiff has proved that they undertook to become liable for such acts or omissions."

The Court declined so to charge, and charged about in these words:

"I think that when the holder of a note needing protest deposits it with any one for collection, having within his knowledge facts relating to the residence of the parties to be charged, which cannot be discovered by the exercise of reasonable care and diligence, and without which the agent is not likely to give the proper notice and make demand; and

the holder does not communicate such information to his agent, and the agent using proper diligence fails to charge the proper parties, for the want of the special knowledge aforesaid, the agent cannot be held liable on account of such failure."

To the refusal and charge the Defendants excepted.

Twenty-sixth Exception—The Defendants asked the Court to charge—

" If the jury find that the Plaintiff was a customer, and had current business dealings with the Defendants as bankers, both before and after the delivery of the note in suit, he is chargeable with notice of the business usage and customs of the Defendants relating to such business of banking."

The Court declined, but went on to say, in this connection—

" If the testimony shows that a person had dealings of such a nature as the transaction to which the special custom relates, then the instruction is correct. A mere depositor, however, would not be chargeable."

The Defendants excepted.

Twenty-seventh Exception—The Defendants asked the Court to charge, (No. 10)—

" If the note described in the complaint was, together with another note of even date, which matured subsequently, secured by a mortgage, and the mortgage has been foreclosed, the amount realized upon such foreclosure must be applied upon the note first maturing."

The Court refused so to charge, and the Defendants excepted.

A verdict was rendered against Defendants, June 6, 1860, for $2,910.31.

Twenty-eighth—The verdict is against evidence.

Twenty-ninth—The damages are excessive.

Points and authorities of Appellants:

*First.*—The first exception we believe well taken, because it does not appear that the note was left with Dr. Borup, and whatever the undertaking of the Defendants was, it arose upon the facts transpiring before and at the time the note was left for collection. The contract, if any, was then consummate. It is needless to enlarge upon the danger of letting in

loose conversations, after the fact fixing the Defendants' liability, to characterize such liability.

*Second.*—The second exception we rely upon as strictly a cross-examination. The witness had testified to the transfer of the note and mortgage to himself; and that he became the owner by reason of such transfer. It was therefore competent for the cross-examination to inquire into all the facts and incidents of the transfer elicited from the witness in chief. The same reasoning applies with added potency and force to the ·fifth exception. The witness Eaton had testified on his direct examination that he had endorsed the note in controversy : "You say you endorsed the note, now tell us all about it, how you came to do so, and under what circumstances, if at all, you so endorsed." It is difficult to perceive how a cross could be more apposite to a direct examination than this.

*Third.*—The witness Eaton, after having been excluded from testifying to solvency subsequent to the maturity of the note, was allowed (vide third exception) to give the value of his mill, which was commenced in May, 1858, and finished January 16, 1859, nearly a year after the note matured. The testimony was unnecessary and immaterial, except in rebuttal, (where it could not have been used in this case, as the Defendants offered no proof upon this point,) because the note was *prima facie* evidence of the damages. It was competent for the Defendants to have mitigated the damages ascertained *prima facie* from the note, by showing insolvency of the endorser, and of consequence no injury. This of course could only be shown or disproved at the time the action accrued to the Plaintiff. The same reasoning applies to the seventh exception. *Vide Sedgewick on Meas. of Dam.*, p. 347, &c.; *Story on Agency*, secs. 222, 236; *Allen vs. Suydam*, 20 *Wend.* 321.

*Fourth.*—What relevancy to the issues upon trial had the testimony embraced in fourth exception, *i. e.*, that witness had known Borup in 1852, had built a mill for him, and presumed he had talked with him about building his own mill?

This class of testimony tended to mislead the jury, was irrelevant, and therefore erroneously received.

*Fifth.*—It is enough to say, in support of the sixth exception, that the objection was too general to prevail. The

testimony was competent because it tended to show, that the Plaintiff regarded a notice upon S. S. Eaton of St. Paul as good, and to disprove the alleged notice to Defendants. The Plaintiff will of course take nothing by a general objection, if the testimony was admissible for any purpose. *Caleff vs. Hillhouse*, 3 *Min. Rep.* 311.

*Sixth.*—Under this point may be grouped the 8th, 19th, 20th, 23d, and 24th exceptions. This Court will observe that the action was tried below upon the theory, that the Plaintiff's cause of action was an incident to the note and its ownership. The complaint alleges ownership of the note at maturity, and at the commencement of this action. The answer makes a distinct issue upon the ownership at the commencement of the suit. The Plaintiff swears that he was the owner and holder of the note at maturity, at the date of action begun, and at the time of trial. It is too late for the Plaintiff now to stand upon a different hypothesis.

*Seventh.*—The Court erred in charging the jury as stated in the eighteenth exception, to wit: That there was no evidence that the Plaintiff ever transferred his claim or cause of action against the Defendants for damages. The fact that he had at one time transferred the note and mortgage was confessed and proved, and was of itself sufficient to warrant a jury in finding that the cause of action, if at all severable from the note, was also passed. The Court had no business to charge a conclusion of fact. In this connection, we refer to the tenth exception. The proof then offered was, to our mind, clearly pertinent, as tending to show that the cause of action had been transferred. The facts show that Mrs. N. then held the note and mortgage; that they were left with Mr. Simonton for foreclosure by Plaintiff, and that her attorneys, while holding the papers for the purpose, notified the Defendants of the foreclosure. The facts charge Plaintiff with privity of this letter. Why notify the Defendants if no relations were supposed to exist between the note and mortgage and Mrs. Nininger, the then pretended owner and holder.

*Eighth.*—The Court below charged in No. 16 exceptions, that the note might still be put in suit against the parties to it, *i. e.*, the maker. Would it be a good answer that Plaintiff

had in this action had a recovery against the Defendants for the full face of the note? Scarcely not, if they are, as the Court charged, distinct matters. They might be owned by different parties, as they in fact are in this case. Here then we have two full recoveries upon the same obligation. It is clear to us that the Court below erred in rejecting exhibits seven and eight, embraced in exception nine. We were allowed to show all the transfers down to the pretended foreclosure, and the proceedings upon foreclosure are excluded. Why? The answer alleged a foreclosure—the reply admitted it, and alleged that the purchase money was applied upon the note last falling due. It was certainly proper to show that the mortgage notice described both notes, and was foreclosed for their benefit.

*Ninth.*—The Court erred in rejecting the evidence contemplated by question found under eleventh exception.

The answer alleges the custom of bankers in general, and of Defendants in especial, respecting such paper, and Plaintiff's knowledge then of the question asked, was competent as a preliminary one, to showing Plaintiff's knowledge of such custom or such designs, with Defendants' institution, as charged him with notice. If the Defendant had notice of a particular custom of this Bank, or if he dealt with the bank, he is chargeable with notice in any event. How could the defence prove the fact of notice, either actual or presumptive, except by first establishing the preliminary fact that the custom existed.

But the objection itself was bad in form. It presupposes that a custom, in order to be of force in its operation upon contracts, must be universal or world wide, whereas, it has the force of law if it be general, amongst a particular class in a distinct community. 1 *Cushing,* 186–188; *Miles vs. Bank U. S.,* 11 *Wheaton,* 430; 6 *Condensed Rep.* 695, &c.; *Bank of Wisconsin vs. Triplett,* 1 *Peters,* 31–33.

The remarks and authorities above are also applicable to the twenty-sixth exception.

*Tenth.*—The two exceptions embraced in No. 12 of exceptions are regarded as entirely fatal to the verdict, if there was nothing else of the cases. The Defendants offered to show substantially that the endorsement was without consideration,

and that the indorsee, for value, agreed not to hold the endorser liable, and that Eaton's name was written upon the back of the note simply to pass the legal title. That the Plaintiff cannot recover more than he has been injured, will not be denied; ( *Vide Story on Agency, supra,*) and I believe this is first of recorded cases where persons, not parties or privies, were concluded by the terms of any writing whatever. The principle which allows such conclusiveness to writings, as a general thing, is wise and salutary, and rests upon the reasoning that all the attendant talk—the *colloquium,* to be nice, is supposed to be solemnly reduced to writing, and loose words shall not be allowed to control solemn writings. Parties and privies are estopped from denying or varying what they have written down. This reasoning does not apply to strangers, and the rule has never been applied to them. *Vide* 2 *Cowen, Hill & Edwards' Notes to Phil. Ev., p.* 697; 2 *Phil. Ev., p.* 354, *et al.*

A blank endorsement upon the back of a promissory note, is not a contract completely written out. It is *prima facie* the contract of an endorser, and you may write the terms of such a contract over it. It is, however, only *prima facie;* and you may write over the endorser's name just such a contract as he in fact made. And this is no invasion of the venerable rule that you cannot by parol vary the terms of a writing. *Vide* 2 *Cowen, Hill & Edward's Notes,* 670, *and cases; Stackpole vs. Arnold,* 11 *Mass.* 32; *Susquehanna Bridge and Bank Co. vs. Evans,* 4 *Washington C. C. R.* 480; *Hill vs. Ely, Sergeant & Rawle,* 163; *Gunpy vs. Harden,* 7 *Taunt. Rep.* 163; *Barker vs. Prentiss,* 6 *Mass.* 420, 33, 34; *Barnes vs. Lane,* 5 *Vermont,* 161; 1 *Minn. Reports,* 369, 308, 383; 2 *Ib.* 139, 147; 6 *Conn.* 528.

*Eleventh.*—The testimony excluded, as appears from exception No. 13, was improperly rejected. The note and instrument being cotemporaneous, were correlated and integers of the same transaction. The evidence was admissible for the reasons urged under said point, and besides affecting the measure of damages. Mr. Nininger, indorsee of Eaton, could recover of his immediate indorser no more than he actually paid. This doctrine will not be disputed. It was important

to show, in reference to the damages, that Plaintiff did not in fact give the face of the note. There was nothing in the objection that no writing was produced.

*Twelfth.*—It was plain error to reject evidence of the value of the mortgaged land at the time of the transfer from Eaton to Nininger, and more especially the offer to show its value at the date of the sale. *Vide exception No. 14.*

It was manifestly proper evidence upon the question of damages. The Plaintiff here recovers, if at all, not an arbitrary sum fixed by the note, but what he has actually suffered: It is confessedly allowable in mitigation of damages to show that the maker was solvent, or that the indorser was insolvent, and hence infer that the Plaintiff has not been damnified by the laches of the Defendants. So of the facts offered. They were of a class of facts eminently fit to go before the jury, in estimating the price of the injury. We were permitted, and with undoubted propriety, to (so far as it went) deduct a portion of the proceeds upon the foreclosure sale, as affecting this very question. That sale was not conclusive upon us who were strangers to it. It may have been conducted clandestinely, fraudulently or unwisely. Where then did the Court below deduce the distinction which permitted the evidence in the one case and rejected it in the other?

*Thirteenth.*—The Court below erred in charging the jury in accordance with the eighth and tenth requests of Plaintiff below, with qualifications, and in declining to charge as requested by Defendants in fifth request. *Vide Dorchester & Milton Bank vs. New England Bank,* 1 *Cushing,* 186–188; *Mechanics' Bank vs. Merchants' Bank,* 23 *Pick.* 332, &c.; *Lawrence vs. Stonington Bank,* 6 *Conn.* 528, &c.; *Bank of Washington vs. Triplett,* 1 *Peters,* 25; *Smedes vs. Bank of Utica,* 20 *Johns. R.* 372; *Allen vs. Merchants' Bank of N. Y.,* 15 *Wend.* 486; *Bank of Orleans vs. Smith,* 3 *Hill,* 562, &c.; *East Haddam Bank vs. Scovill,* 12 *Conn.* 301; *Van Mart vs. Wooley, et al, Barn. & Cress.* 439, &c.; *Smith's Mercantile Law,* 155, and *cases; Bellamy vs. Bank of the U. S.* 4 *Wheaton,* 173; *Hyde & Goodrich vs. Planters' Bank Miss.* 17 *Louisiana,* 560; *Tierman, et al, vs. Com. Bank Miss.* 7 *Howard Miss.* 648; *Agricultural Bank vs. Com. Bank,* 7 *Sm. & M.* 592; 2 *Robb* (*La.*) 294; *Bankers' Magazine,* 505, 506.

*Fourteenth.*—The Court below erred in declining to charge as requested by the Defendants in regard to the application of the fund (*Vide Exception No. 27, request No.* 10.)   *Collated Rev. Stat., p.* 644, *sec.* 3; *State Bank vs. Tweedy,* 812 *Blackford, vol.* 1; *Hill on Mort.* 174.

*Fifteenth.*—The damages are excessive.  It will be seen that the jury has found the face of the note with interest from the day it should have been protested, notice served on Eaton, less one-half of the proceeds of the sale upon the foreclosure of the mortgage.

It appears by the testimony of Nininger and of the assignments in evidence, that both of the notes and the mortgage were assigned to Mrs. Saunders for a consideration equal to the then ₜface and interest; that she married, and as a *feme covert* transferred the notes and mortgage for the full face and interest to Mrs. Nininger, wife of Plaintiff, and that she handed the note to the Plaintiff, her husband, about a week before suit brought.  We have already seen that these re-transfers, and especially the last, could amount to nothing.  It then appears that Nininger has received in full the amount of this note and the other, and therefore was entitled, even under the charge of the Court below, to nominal damages only.  At all events, it appears that the note is outstanding from the Plaintiff, and the subject of a recovery in other hands as a matter of law.  This is of itself evidence, *prima facie* at any rate, and conclusive proof, if uncontradicted, as it is here, that it has been put out for its full face.

Points and Authorities of Respondent:.

The first exception is to the following question by Plaintiff's counsel to the Plaintiff, who was a witness in the case:

"Had you any conversation with Dr. Borup, immediately after he left the note?"

If it was competent for the Plaintiff to show that the Defendants had knowledge and notice of the residence of Eaton, then there can be no conceivable objection to the testimony admitted.   Dr. Borup was the admitted managing agent of the Bank, and was proved to be so by the cashier, Livingston, and to say that we cannot show that he was noti-

fied of the residence at the time the note was left, because the notice might have been ten seconds after the note was passed over, is to state a proposition of law which is unworthy of consideration.

In this connection we may also consider exception number four. This exception goes to the testimony of S. S. Eaton. The testimony goes to establish the fact that Dr. Borup was acquainted with S. S. Eaton, the endorser of the note, from 1852 to May, 1858, that during that time he had been employed by Dr. Borup one and one-half years, that he had business at his bank, &c.

This testimony would at least tend to show that Dr. Borup must have known that S. S. Eaton of Nininger was not the S. S. Eaton of St. Paul, and imposed upon him as a banker the duty of making inquiry as to which of them was the real endorser. A jury should have found from this testimony alone that the bank had notice, even without the testimony of Nininger.

The objection is that the testimony was immaterial. If this be true it cannot disturb our verdict. A judgment will not be reversed on account of testimony which would not tend to influence the verdict of the jury. See *Flint vs. Rogers*, 15 *Maine Rep.* 69.

The four exceptions, numbering 2, 5, 12, and 13, embrace but a single proposition, and should be considered together. The substance of all the questions and propositions amount to no more than this—1st, to show or prove what verbal understandings there might have been between the endorser and endorsee at the time of the endorsement; and 2d, the offer to prove the memorandum whereby Nininger agreed to buy the note, *coupled with the fact that he did so buy it.* The memorandum amounts to nothing, and nothing will be said of it. But can the Defendant show what was said between Eaton and Nininger at the time of the endorsement and transfer of the note?

It might however be observed, that no written memorandum was introduced, and the offer was to show the contents of one, without even suggesting its loss, if there ever was one. The proposition is certainly without precedent, and we suppose will not be urged to the Court.

In the offer of the testimony of the witnesses there is no intimation of fraud—none of mistake—none of ambiguity, and indeed no reason is given why the rejected testimony is competent, nor what was expected to be proved. The only inference which a Court could draw from the question would be that the Defendants intended to contradict or modify the written undertaking of Eaton to Nininger, by the endorsement of a negotiable promissory note. If the answer of the Defendants, a copy of which is found in the case, is any index to what the Defendants designed to prove, it is that they intended to contradict directly the written promise of Eaton, which he made when he endorsed and delivered the note to Nininger.

It would seem that this question had been long enough settled to be divested of doubt.

Under exception third the witness Eaton is asked the value of his mill. The object of the question, as will appear from the whole case, was to prove that Eaton had ability to pay the note in question, not only at the time it matured, but since that time. The labor for the foundation of the mill was commenced in 1857, but the mill was not completed till January, 1859. The machinery, and a large bill of lumber, were purchased before the note matured. The cost and value of the mill were the facts which a jury might well take into consideration, in arriving at some conclusion as to the responsibility or irresponsibility of the endorser Eaton.

It is indeed the only kind of testimony which was legitimate. If the question was, how much was he worth at the day of the maturity of the note, the testimony would tend to prove it, and would be competent beyond any doubt, but we are not confined to that day. Men are often credited to a large extent, who are worthless, upon confidence placed in their integrity, energy and ability. If Mr. Eaton has at any time since the maturity of the note had means to pay it, it is sufficient for this action. We were not confined to a day in the collection of the note, and if Mr. Eaton is able to-day to pay the balance due, it requires no very comprehensive genius to perceive that we have been damaged by the neglect of the Defendant to the extent of that balance. If necessary we

could even go further, and claim the full amount of damages, upon the probability that he, Eaton, would, at some future time, be able to pay; but we insist that the testimony objected to proves conclusively or tends to prove that at the maturity of the note, and ever since that time, Eaton has been responsible. What objection can be raised to this kind of testimony it is difficult to perceive.

Under exception sixth the witness Eaton was asked if he received notice of the protest of the note from the Plaintiffs, that notice had been served on S. S. Eaton, of St. Paul, "your agent?" This question was asked by counsel for Defendants or Appellants—the question was objected to by the Plaintiff's counsel, and the objection sustained, and we say properly. It does not appear that S. S. Eaton of St. Paul was the agent of S. S. Eaton of Nininger, nor is the question asked whether or not he was the agent, and least of all does it appear, or is the question asked, whether or not S. S. Eaton of St. Paul was appointed by S. S. Eaton of Nininger as special agent to receive notices of protest of the paper of S. S. Eaton of Nininger. This must all have been proven before the testimony would be material, and as no such agent ever existed for any person, and probably never will, we have no reason to comment on the immateriality, not to say absurdity of the question.

The point arising under exception seventh is the same as that under exception third.

Exceptions number 19th, 20th, 23d, and 24th, combine substantially the same propositions. The gist of them is that the Plaintiff, at the time of the commencement of the action, was not the owner of the note. The case shows that it was transferred by Eaton to Nininger before maturity. In July, 1858, it was transferred to Mrs. Agnes Saunders by Nininger, as collateral security for the payment of a debt due from Nininger. It was subsequently transferred by Mrs. Saunders, then Kemp, to Mrs. Nininger, the wife of the Plaintiff, and by her to her husband.

Objection is made to the two last transfers, because they were made by married women. Mrs. Saunders was single when the transfer was made to her. The note was therefore

her property.   Could she transfer it by delivery?   The Legislatures of the States of the United States have been extending from year to year the rights and authority of *femes covert*, but in the examination of this question we will first consider their rights and authority at common law; second, her rights and authority under our Statute laws; and again, whether the Defendants are in a condition to contest the question of the ownership of the note, it being in the possession of the Plaintiff and produced before the jury.   We shall also insist that it is totally immaterial whether we owned the note or not, at the time of the commencement of the action, as the damage which we claim accrued before Nininger, the Plaintiff, transferred it.

Under exception, ninth the question is upon the introduction of the papers proving the foreclosure of the mortgage. The case does not show why the papers were offered, nor why excluded, but as the foreclosure was alleged, both in the answer and reply, as may be seen by reference to the pleadings, it may well be supposed that the introduction of the papers could not affect the cause—and a still stronger reason for their rejection may be found in the fact that Nininger had no interest in the foreclosure except that there was taken from his note a proportionate amount of the money for which the mortgaged premises were sold.

Under exception tenth the letter of the attorney of Nininger is offered in evidence.   The letter does not show either that the Defendants were liable or not.   It amounts to nothing. Even if it had been written by the Plaintiff it would be equally immaterial.   It does show that the Defendants were duly notified of the time of the sale of the mortgaged premises, and that the allegation in the answer that the premises were sold *secretly* is false.   What reason the Defendants had for offering the letter in evidence, or the Plaintiff in objecting to it, the case does not show, and I think it will be out of the power of the Court to divine what it was.   It could in no view aid the Defendants.

The point made under exception eleven, is too frivolous to be considered.   The question goes to the particular private custom of the Defendants' bank.   It does not require us to

say that we are only bound by a general custom.  5 *Pick.* *R.* 15; 11 *Ib.* 428.

Under the fourteenth exception the Defendants ask what was the value of the land mortgaged.  We have no reason for speaking on this point.  The premises were sold at public auction.  This is alleged in the answer of the Defendants, and also in the reply of the Plaintiff.  It cannot now be denied, and the Defendants have introduced, or offered to introduce, a letter from the Plaintiff's attorney to the Defendants, notifying them of the time and place where the premises would be sold.

Under exception fifteen the witness Fisk is asked a question by the Plaintiff's counsel which is designed to contradict the testimony of Livingston, the Defendants' cashier.  It is only necessary to refer to the testimony of both witnesses to see that the testimony of each witness refers to the same time. The objection was that the time was not identified or fixed. The testimony will satisfy the Court upon this point.

Under exception twenty-five Defendant asks instructions of the Court in regard to the duty of a banker when the parties liable live at some distant place.  The charge of the Court was that if the creditor or Plaintiff had facts within his knowledge and not within the knowledge of the banker, he was bound to disclose them, and if loss occurred by his withholding such facts, the banker would be thereby discharged. Such is the substance of the charge, and whatever the Plaintiff might have said to it, the Defendants have no cause of complaint.  *The Montgomery County Bank vs. the Albany City Bank and the Bank of the State of New York,* 8 *Barb. S. C. Rep.* 396; *Commercial Bank vs. the Bank of New York,* 1 *Kernan,* 214; *Allen vs. Merchants' Bank of New York,* 22 *Wendell Rep.* 226.

Under exception twenty-sixth instructions are asked as to the effect of any knowledge which the Plaintiff had of the custom of Defendants' bank.  The charge was correct, as will be seen by the authorities, but if it were not, it could not affect our verdict because the whole case shows that the custom of the Defendants' bank was the same as that of all other banks, but that they were negligent, and did not in this case conform to the usual custom of banks.

Under exception twenty-seventh the Defendant claims that the amount paid upon the mortgage sale should all be appropriated toward the payment of the first note.   The authorities are so indisputable upon this point that we will merely refer to them.   *See* 23 *Pick.* 473, 475; 20 *Ib.* 339; 10 *Ib.* 129; *Cowperthwait vs. Sheffield*, 1 *Sandf.* 416.

Both notes had matured before the purchase of the mortgage, and each holder had an interest in the sale of the premises and purchase money.

It has already sufficiently appeared that the material question before the jury in this action was whether the Defendants had notice that the endorsee of the note was S. S. Eaton, resident of the town of Nininger.   That question engrossed a large part of the trial, as the case shows.   The jury by their verdict decided that they had such notice.   Upon the question then of the liability of the Defendants for their negligence, we will cite the authorities which we find upon the Defendants' brief.   1 *Cushing R.* 177; 23 *Pickering*, 330; *also foregoing cases*.

A Court will not set aside the verdict of a jury as being against evidence, unless there appears such a gross mistake as to warrant the belief that they have been governed by gross ignorance, or prejudice, or passion.   The Court will perceive that the jury performed their duty in such a manner that no exception can be taken to it.   *See* 1 *Graham & Waterman on New Trials*, 380, 381; *Hammond vs. Waldham's* 5 *Mass.* 353; *Caffin vs. Phœnix Insurance Co.* 15 *Pick.* 291; *Cunningham vs. Mayoune*, 18 *Pick.* 13; *Baker vs. Brigg*, 8 *Pick.* 122–126.

VAN ETTEN & OFFICER, and J. B. BRISBIN, Counsel for Appellants.

M. SHERBURNE, JAMES SMITH, JR., and M. E. AMES, Counsel for Respondent.

*By the Court.*—FLANDRAU, J.   Nininger, the Plaintiff below, owned the note at the time of its maturity.   He left it with the Defendants for collection.   Had they fixed the liability of Eaton, the endorser, the note would have been just

as much more valuable as the pecuniary ability of Eaton was adequate to make up the deficiency that remained unpaid upon the note after the mortgage security was exhausted. They failed to notify Eaton of the dishonor of the note, and Nininger was left to collect it of the maker, and the security.,

After this the Plaintiff transferred the note and mortgage to Mrs. Saunders, as collateral security for a debt. Mrs. Saunders married and became Mrs. Kemp, while she held the note and mortgage. While she was Mrs. Kemp, and her husband living, she, through an agent, transferred the note and mortgage to the wife of the Plaintiff. Mrs. Nininger had the mortgage foreclosed while she owned the note, and there was realized upon it the sum of $1,475. This mortgage was also security for another note of about the same amount, given at the same time the one left with the Defendants for collection was executed. Immediately previous to the commencement of this suit, the note was transferred to the Plaintiff by Mrs. Nininger, his wife. The security is exhausted, the maker insolvent, and this action is prosecuted to recover of the Defendants the balance left unpaid upon the note.

The cause of action is for the negligence of the Defendants in allowing the endorser, Eaton, to be discharged from his liability. It is not strictly an action arising *ex contractu*, and reasonable doubts may be entertained if the claim was assignable. *Gardiner vs. Adams*, 12 *Wend.*, 297; *People vs. Tioga Com. Pleas*, 19 *Wend.*, 73; *People vs. Gibbs*, 9 *Wend.*, 29; *Franklin vs. Law*, 1 *John*, 402; *Hall vs. Robinson*, 2 *Comst.*, 293; *Sumner vs. Wilt*, 4 *Serg. and Rawle*, 19-28; *North vs. Turner*, 9 *Serg & Rawle*, 244; *O'Donnell vs. Seybert*, 13 *Serg. and Rawle*, 54; *Shoemaker vs. Kelley*, 2 *Dall.*, 213. But aside from this view, there is nothing to show that the Plaintiff ever did assign or attempt to assign the claim for the deficiency. Nor was the cause of action regarded on the trial as inseparable from the note as contended for by the Defendants' counsel. The Plaintiff insisted that the mere transfer of the note and mortgage did not carry with it the cause of action against the Defendants, and the Court so charged the jury. It was necessary, of course, in stating the cause of action against the Defendants, to recite the note and the fail-

ure of the Defendants to charge the indorser, and the insolvency of the maker; but that did not unite the two. This action would not have been maintained in the name either of Mrs. Kemp or Mrs. Nininger upon the testimony that we have before us, while the note and mortgage were in them. They would have been obliged to show something more than the mere ownership of these instruments, supposing the claim to be assignable. Any action they could have maintained would have been upon the note and mortgage, against the parties to those instruments. This action arises out of other facts, the note and mortgage being necessary only in measuring the damages. The regularity of the several transfers of the note and mortgage, becomes therefore in this case unessential to the Plaintiff's right to recover. Mrs. Nininger, in fact, availed herself of all the value the note and mortgage possessed while they were in her possession. She exhausted the security, and the insolvency of the maker left her without practical recourse on him. The endorser was wholly lost before either she or Mrs. Kemp acquired any interest in the paper. The Plaintiff in this action was the only person ever damaged by the discharge of Eaton.

The measure of damages in such cases is *prima facie* the face of the paper. The Plaintiff must make out the insolvency of the maker, and the solvency of the endorser discharged by the act of the Defendants. The Defendants may mitigate the damages by showing either the solvency of the maker, the insolvency of the endorser, or that the paper was partially or wholly secured, or any other fact that will lessen the actual loss to the Plaintiff; the real loss occasioned by the improper conduct of the Defendant, being the fact for the jury to arrive at in measuring the Plaintiff's damages. *Sedgwick on Dam.*, 340, *et seq.*; *Hoard v. Garner*, 3 *Sandf.*, *S. C. R.*, 179; *Blot vs. Boiceau*, 3 *Comst.*, 78; *Allen vs. Merchants' Bank*, *N. Y.*, 22 *Wend.*, 215; *Allen vs. Suydam*, 20 *Wend.*, 321.

The first exception taken on the trial by the Defendants, was to a question put to the Plaintiff as to whether he had any conversation with Doctor Borup immediately after leaving the note. The Plaintiff had a right to show any instruc-

tions given to the Defendants concerning the note, at any time before it was transmitted to the Defendants' correspondent at St. Anthony for demand and protest. In this case the residence of the endorser did not appear on the note, and there being two persons of the same name, it was incumbent on the Plaintiff to establish the fact that he informed the Defendants which of the S. S. Eatons was the endorser, the one at St. Paul or the one at Nininger. When informed that the endorser of the note was the Eaton residing at Nininger, the Defendants should have conveyed that information to their agents in St. Anthony. Whether this notice was given by the Plaintiff, was one of the points most strongly contested on the trial, and the jury have found against the Defendants on the evidence.

The second objection, concerning the agreement under which the note was assigned to the Plaintiff by Eaton, was irrelevant, as there is no issue upon the ownership of the note, save at the time of the commencement of the action. Folio 140 of the case: and the title at the time of the transfer is admitted in the second defence.

The third objection occurs in folio 19, and is to the question put to the witness, Eaton, as to the cost of finishing his mill. The Defendants were in error about the necessity of showing the endorser solvent on the day of the maturity of the note. Of course if he was solvent on that day, that would be sufficient, as we may presume that had he been charged he would have paid the note. But certainly if he was solvent at any time between the maturity of the note and the commencement of the action, it is difficult to see why the Plaintiff may not show it. If he was so solvent, the Plaintiff could have made his money out of him, and the Defendants have deprived him of the ability to do so.

In the case of *Blot vs. Boiceau*, 3 *Comstock*, 78, the Defendant sold goods consigned to him for less than he was instructed by his consignor. In an action against him it was held that he might show in mitigation of damages that the goods were not worth in fact more than they were sold for. It was objected that such a rule would render the instructions of a principal nugatory, and allow an agent to violate them with

impunity. The answer of the Court, by both Judges who delivered opinions, was, that the violation of the instructions would entitle the owner of the goods to recover the value of the goods at any time before the action was brought, and Bronson, J., says, " Perhaps down to the trial." The theory is, that the market belonged to the Plaintiff, and he had the right to it with all its advantages ; the Defendant having deprived him of it, must make it good. If the goods had risen in value, he had a right to the increase. The theory in this case is the same; the liability of the endorser belonged to the Plaintiff, and he was entitled to the advantage of his solvency at any time after he was fixed.

The fourth objection is answered thus : The Plaintiff had the right to show that the Defendants knew the Eaton, of Nininger, as one circumstance tending to strengthen the proof given, that he, and not the Eaton of St. Paul, was known to the Defendants to be the endorser of the note.

5th.—The contract of Eaton upon the note was that of an endorser. If the Defendants had notified him, the Plaintiff would have had an action against him as an endorser of the note, and been entitled to a judgment against him for the amount due upon it. In such action, Eaton would not have been allowed to show any previous agreement, that his contract was different from what it appeared to be upon the note *Walters, et al., vs. Armstrong, ante p.* 448. It was this action that the act of the Defendants has deprived the Plaintiff of, and he cannot be allowed to show what would have been denied to Eaton therein, except such matters as would have rendered the judgment valueless, or depreciated it, as for instance, insolvency, or pecuniary embarrassments.

6th.—The evidence here offered, assumed that the Eaton of St. Paul, was the agent of the witness, a fact not proved in the case, and was properly rejected.

7th.—This objection is disposed of in the discussion of the third.

8th.—This objection falls under the remarks upon the Plaintiff's ownership of the cause of action heretofore made.

9th.—The exclusion of the foreclosure papers, and the Sheriff's certificate of sale, was not substantial error. The

fact of the foreclosure, and the amount realized, were admitted in the pleadings. The Defendant had not laid a sufficient foundation in his answer, to attack the sale for fraud, and charge the Plaintiff with the actual value of the lands instead of the amount of the bid, and if he had, these papers would not have aided him in making it out. It appeared elsewhere that the mortgage was given to secure two notes, and the proceeds were apportioned between them. We cannot see how the admission of these papers could have affected the result one way or the other, even if they were admissible.

10th.—The Plaintiff was in no way responsible for the letter written by the attorney who foreclosed the mortgage for Mrs. Nininger. It proves nothing for or against him, and was properly ruled out.

11th.—It was the duty of the Defendants to transmit the instructions, concerning the residence of the endorser, received by them from the Plaintiff, to their correspondents. What those instructions were was for the jury. No custom could absolve them from this duty, as it was the very essence of their undertaking, the fixing of the liability of the endorser. The objection that a custom must be *universal* to be proved, was perhaps rather broader than was required by the law on the subject ; but it is rather hypercritical to question the form of the objection in this instance. We think when the form is considered with reference to the subject under consideration, and the charge the Judge gave upon the question of notice of customs, it is clear that the objection was not understood to mean more than *general*, or universal in the community where the business was being transacted. *Hinton vs. Locke*, 5 *Hill*, 437–9.

12th.—This objection has been discussed under No. 5.

13th.—If the Plaintiff did buy the note at a discount, he was entitled to recover the full face of it against the parties to it, and the evidence offered could not change the measure of damages in this case.

14th.—The Defendant could not show that the value of the land was more than the bid at the sale, unless the sale was fraudulent, and he had not alleged facts enough in his answer to impeach the sale.

15th.—Fisk was called to contradict the witness Livingston, as to some testimony concerning the marks and erasures upon the note, and as to a conversation that occurred between them at the bank of the Defendants, concerning the failure to notify Eaton. Livingston's recollection about the time of conversation with Fisk, was very uncertain. He, however, admitted having one with him at the bank; but the one conversation was referred to by either. This was sufficiently accurate to allow Fisk to give his version of what took place, the objection being merely as to the time.

The Court was requested by the Plaintiff and the Defendants to charge the jury according to their respective theories of the action and the defence. The charge given was substantially that the cause of action was not necessarily connected with the ownership of the note. That there was no evidence showing that the cause of action had been transferred by the Plaintiff. That the note, under the circumstances, could be lawfully transferred by Mrs. Saunders after coverture by delivery. That consent of the husband may be presumed as to personal chattels transferrable by delivery. That where nothing appeared to the contrary, the proceeds of the mortgage sale should be applied rateably to the two notes secured. That it was the duty of the Defendants to take prompt and proper measures to fix the endorser, and that due diligence depended upon the facts and circumstances of the case. That the Defendants could not attack the transfers of the note for technical defects, it being in the possession of the Plaintiff, and in evidence, and there being no fraud. That in the absence of fraud or coercion, a married woman may transfer personal property to her husband. That the Defendants were not in a position to attack the transfer from the wife to the Plaintiff. That when there are special facts in relation to parties to a note to be charged as endorsers, it is the duty of the party leaving the note to communicate such facts to the bank, and the bank must then advise their correspondents of the special matter. That in this case it was necessary for the jury to determine the facts—with whom the note was left—what was said—what did the Defendants do in the premises, and that the burden of proof is on the Plaintiff.

That if the testimony shows a party had dealings with a bank of the nature to which a special custom relates, he would be bound by it; but not so as to a mere depositor.

The verdict was for the Plaintiff, for the amount of the note less the rateable proportion of the amount realized upon the mortgage.

The Court did not charge all that either the Plaintiff or the Defendants requested, but qualified their respective demands as above. The charge is, in the main, the law of the case, and the Judge had the correct theory. Whether or not that part of the charge touching the powers of married women over their personal property, and the right of a husband to take directly from his wife, is good law or bad, cannot in any way influence the case upon the theory under which the Judge considered it. The cause of action had never been out of the Plaintiff. It did not follow the note and mortgage, although the amount of damages depended upon the result of the foreclosure. Therefore, the Court properly said the Defendants were not in a position to raise questions on the regularity of the transfers of the note.

We see no error in the case substantially affecting the Appellants. The order denying a new trial is affirmed.