By the Court,

Cowen, J.
The drawees were not in funds when the hill was presented; they would not have accepted without instructions to that effect; and the instructions were by letter not to accept. It was a hopeless bill, therefore, as to the drawees, in every sense; and the only ground o\i which tlie plaintiffs can claim is on the failure to present for acceptance with reasonable diligence,'i. e. immediately with a view to the plaintiff’s remedy over against the drawer.
To save the remedy by action against the drawer, it was enough as between the payees and him, that the bill should be presented for acceptance at any time before the 25th of September, which was the third day of grace (Chitty *210 on Bills, 299, Am. ed. of 1836, and the cases there cited). It was protested for non-acceptance as early as the 10th September, and notice given to the drawer and the holders, with a request that they would discharge the defendants, or give instructions whether the presentment should be repeated. They declined to do either, and indicated the intention of holding the defendants to their strict duty. Was that discharged ? On the protest for [371] non-acceptance, and notice to the drawer, the plaintiffs might have proceeded immediately against him. They were not bound to w’ait and demand payment (Chitty on Bills, 370, 371, 372, 299, and the cases there cited). Clearly, nothing has been lost by the defendant’s laches, as against the drawees. Was their duty discharged in respect to the remedy against the drawer ? By a transmission through the next post, more time would have been obtained. The defendants received the bill on the 16th of August, and waited till the 2d of September before it was transmitted; in all 17 days. Yet the bill was presented for acceptance even earlier than was strictly necessary to charge the drawer as between the holders and him This step, although not necessary, imposed the duty of giving immediate notice to the drawer (id. 355, 6, and the cases there cited), which it is not denied was done. Is any thing more necessary as a matter of common diligence between the agent and the holder? No special request is shown that extraordinary diligence should be exercised; no special contract to exercise it has been shown, and no more than ordinary diligence is necessary. Was the locking up of the bill for weeks a course even of ordinary diligence in the agent ? It is stated in Chitty on Bills, 299, 300, see id. 40, S. P., as having been said in several books, that it is the duty of one holding a bill as agent, to present it for acceptance as soon as possible; several reasons are given, one of which is, that if the affairs of the drawer should be deranged, an agent who has neglected to do that, might be answerable in damages and interest to the person who employed him; and he states that to have been adjudged in Van Wart v. Woolley, Mood. & Malk. 526; 3 Barn. & Cress. 439; 5 Dowl. & Ryl. 374. Such, too, seems to be the Scottish law, according to Dunlop v. Hamilton, cited by Chitty from 1 Bell, 320, n.
I have examined Van Wart v. Woolley, as reported in the different books referred to by Chitty. In 5 Dowl. & Ryl. and 3 Barn. & Cress., Lord Tenter den, C. J., delivers the opinion of the court that mere delay of the agent to give notice to his principal, though the drawer were not therefore discharged, would subject him to damages. In Mood. & Malk., N. P. [372] reporters, the damages were assessed, before the same judge, at one shilling. The smallness of the sum was because, in the meantime the plaintiff had recovered the full amount, with damages and costs, by an action in this state against Irving & Co., who transmitted the bill to England. Campbell for the defence, strenuously contended that the mere delay of the remedy,against an insolvent drawer who never had funds, and that too where the amount of the whole bill had been recovered from another, would not maintain an action. Lord Tenterden, however, was clearly of a contrary opinion.
We may certainly assume, upon such authority, that the object of notice is not confined to the saving of the ultimate legal remedy. Such a view, too, is justified by the nature of business. An immediate presentment not only determines the question whether the security of the drawees, or an acceptance supra protest is to be added; but, on protest, it leads directly to inquiry and explanation, and enables the holder to take such prudential measures against all other parties as their character, circumstances, or the general state of the times may demand. In the case at bar, there was not only a want of funds in the hands of the drawees, but a positive fraud by the drawer, who countermanded the acceptance; neither of which was known to the plaintiffs below, nor could be, till the demand made at Concord. A demand *211 before maturity, almost certainly leading to discoveries very important to the principal, is not so unusual as to leave agents in ignorance that an acceptance should be sought for, through the earliest practicable means of communication. A knowledge of the truth, a few days or even a few hours earlier or later, is many times decisive. On the whole, we think the court below were right in holding, as a matter of law, that the delay of the defendants was unreasonable, and that they were, therefore, liable in this action.
The next question respects the amount of damages. The court below observed, “ that the court and jury having no knowledge what the amount of the damage was, except from the proof of the amount of the draft, the jury would find the amount of the draft.” Certainly, if there were [373] any thing appearing in mitigation, it should have been put to the jury Chittyon Bills, 300, note k., citing Dunlop v. Hamilton, 1 Bell, 320, n.; Van Wart v. Woolley, before cited). The difficulty lies in discovering any such ground. The jury must have been left to reach it by the merest conjecture. The fault had been committed, and both parties had awoke to the consequences. The drawer, on the 9th of October, died insolvent; at that time, the whole was irrevocably gone, as far as we can see. The plaintiffs below, as well as the defendants, might have'proceeded against the drawer’s estate to obtain a dividend, if any had been in prospect. It is not pretended that any chance of that kind was left. The case seems to have been prima facie one of simple, total loss, by the fault of the defendants below. It is said there were some slight funds in the drawees’ hands when the bill was drawn, and that several drafts from this same drawer were accepted and paid by the drawees, bearing a date subsequent to the 16th of August; yet we are positively assured by the drawees, that under no circumstances in this case could their acceptance have been expected; and I confess I have been unable to discover any thing on which the jury could have said there was any chance of partial recovery left in any quarter. The case seems to have been given up by both parties as hopeless, on receiving notice of the non-acceptance. We think that in the phrase imputed by counsel to the court below, “ the defendants had made the bill their own, and must pay the nominal amount.” The argument for this measure of damages lies in a narrow compass; the plaintiffs deposited the bill with the defendants as their agents, with a view to save it; they neglected the steps which ordinarily lead to safety, and the common result, a total loss to every appearance, followed as a consequence. See Chitty on Bills, 300, note k.
We are of opinion that the judgment below should be affirmed.