THE FIRST NATIONAL BANK OF MEADVILLE, PENNSYL-VANIA, Respondent, v. THE FOURTH NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

Plaintiff sent to defendant, its correspondent in the city of New York, for collection and credit, a sight draft, drawn by a bank in Meadville, Pa., upon C. P. & Co., bankers in that city; on the morning of its receipt defendant presented it to the drawees for payment, received their check for the amount, and delivered the draft to them. Defendant did not present the check for payment on that day; it was presented the next day, when the bank refused to pay, C. P. & Co. having failed. Defendant on the same day returned the check to C. P. & Co., received back the draft, formally demanded payment thereof, caused the same to be protested for non-payment, and on the next day due notice of non-payment was served by mail upon plaintiff and upon the drawer. In an action to recover damages for alleged negligence on the part of defendant, *held*, that it was the duty of defendant to have presented the check for payment or certification as soon, as with reasonable diligence,

it could, and that for any damages arising from the delay in presentation it was liable.

*Turner* v. *Bank of Fox Lake* (4 Abb. [C. A. D.], 434) ; *Burkhalter* v. *Second National Bank* (42 N. Y., 538) ; *Bank of Washington* v. *Triplett* (1 Peters, 25) ; *West Branch Bank* v. *Fulmer* (3 Penn., 402), distinguished.

It appeared that the account of C. P. & Co. at the bank, upon which the check was drawn, was largely overdrawn on the day when the check was received by defendant, but it appeared that the bank had been in the habit of allowing them to overdraw during any day, they depositing collaterals or making the account good when made up the next day, and that the bank paid all checks down to the failure of C. P. & Co., and among them checks drawn after the one given to defendant. *Held*, that the facts justified the conclusion that the check in question would have been paid had it been promptly presented.

It was alleged in the complaint that the draft could be collected from the drawer ; plaintiff recovered as damages the full amount of the draft. *Held*, error ; that defendant was only liable for the actual or probable damages caused by its negligence ; and that, as sufficient was done by it to charge the drawer who was responsible, defendant was only liable for nominal damages.

*It seems*, that in such case, in the absence of proof, the presumption is that the drawer is solvent and responsible for the amount of the draft.

Also, *held*, that in the absence of proof it would be assumed that the common law rule prevailing here also prevails in Pennsylvania, and that under the law of that State the drawer was charged by what was done by defendant.

*First Nat. B'k* v. *Fourth Nat. B'k* (16 Hun, 332), reversed.

(Argued April 18, 1879 ; decided May 20, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 16 Hun, 332.)

This action was brought to recover damages alleged to have been occasioned by the negligence of the defendant in the performance of its duty, as agent for plaintiff, in collecting a draft sent to it for that purpose.

The facts appear sufficiently in the opinion.

*Benjamin H. Bristow*, for appellant.   The facts proved showed no negligence upon the part of defendant, such as to charge it with any liability.   (Daniels' Negot. Instrts., 24;

Morse on Banking, 325; Shearman & Redfield on Negligence, 267, 275; *Turner* v. *Bk. of Fox Lake*, 4 Abb. [C. A. D.], 434; *Burkhalter* v. *Second National Bank*, 42 N. Y., 538; *Kelty* v. *Second Nat. Bank*, 52 Barb., 328; *Ayrault* v. *Pacific Bank*, 47 N. Y., 570; *Montgomery Bank* v. *Albany Bank*, 7 id., 461; *Allen* v. *Merch. Bank of New York*, 22 Wend., 228; *Turner* v. *Bank of Fox Lake*, 4 Abb. [C. A. D.], 434; *Bank of Washington* v. *Triplett*, 1 Peters, 35; *West Branch Bank* v. *Fulmer*, 3 Barb., 402; *Burkhalter* v. *Second National Bank*, 42 N. Y., 538; *Boutin* v. *Martin*, 31 id., 385; *Farmers' Bank* v. *Vail*, 21 id., 485; *Kelty* v. *Second National Bank*, 52 Barr., 328; *Turner* v. *Bank of Fox Lake*, 4 Abb. [C. A. D.], 434; *Burkhalter* v. *Second National Bank*, 42 N. Y., 538; *Russell* v. *Hankey*, 6 T. R., 12; Chitty on Bills, 400; *Nunnemaker* v. *Lanier*, 48 Barb., 234; *Commercial Bank* v. *Union Bank*, 11 N. Y., 203; *Ward* v. *Smith*, 7 Wall., 447; *Levi* v. *National Bank of Mo.*, 7 Cent. L. J., 249; Daniels on Negot. Instr., 247, 249, and cases cited ; *R. R.* v. *Collins*, 57 N. Y., 641; *Merchants' Bank* v. *Spicer*, 6 Wend., 442; *N. Y. R. R. Co.* v. *Collins*, 57 N. Y., 641; *Ballard* v. *Fuller*, 32 Barb., 68; *Bank* v. *Woodward*, 18 Penn., 357; Morse on Banking, 316.)

*Henry J. Scudder*, for respondent.     Defendant had no authority to postpone the payment of the draft. (Story on Agency, § 98; *Walker* v. *Bk. of State of N. Y.*, 9 N. Y., 584.)     It was enough to make defendant liable to show that the draft would have been paid if presented on the twenty-sixth of March.     (*Shipsey* v. *Bowery Nat. Bk.*, 59 N. Y., 491.) Defendant's negligence deprived plaintiff of the action it might have taken to avert the loss, and was a substantial damage.     (Daniels on Neg. Instrumts., § 1586; *Judd* v. *Smith*, 3 Hun, 190; *Voorhis* v. *Olmstead*, 66 N. Y., 118.) It was defendant's duty to give the drawer such notice as was required by the laws of Pennsylvania.     (Story on Prom. Notes, § 339; Daniels on Neg. Instrumts., §§ 327, 328, 910; *Allen* v. *Merch. Bk.*, 22 Wend., 228, 239, 241.)

EARL, J.    On the 22d day of March, 1866, the National Bank of Crawford county, Pennsylvania, at Meadville, made and delivered to the plaintiff, a national bank located at the same place, a sight draft for $6,000, drawn upon Culver, Penn & Co., bankers in the city of New York.    The plaintiff indorsed the draft and sent it by mail to the defendant, its corresponding bank in the city of New York, for collection and credit.    The draft was received by the defendant on the morning of March 26th, and was on the same morning presented by it to the drawees for payment.    Upon such presentation it received from the drawees their check for the amount upon the Third National Bank of New York, where they kept their account, and it delivered the draft to them.    It did not present the check to the bank for payment on that day ; but it was sent through the clearing-house and presented for payment the next day, the 27th. Culver, Penn & Co. failed on that day, and the bank refused to pay the check.    The defendant then took the check, and on the same day returned it to Culver, Penn & Co. and received back the draft for which it had been given, and then formally demanded of them payment of the draft, and caused the same to be protested for non-payment ; and on the next day, March 28th, due notice of such non-payment was served by mail upon the plaintiff and also upon the drawer.

Upon these facts it cannot be disputed in this State that sufficient was done to charge the drawer.    It was so decided, upon precisely similar facts, in *Turner* v. *Bank of Fox Lake*, (4 Abb. Ct. of Ap. Dec., 434), and *Burkhalter* v. *The Second National Bank* (42 N. Y., 538).    If, therefore, the whole duty of the defendant to the plaintiff was discharged, as claimed by the learned counsel for the defendant, by preserving the liability of the drawer upon the draft, then the judgment appealed from is wrong.

It is the duty of an agent who receives negotiable paper for collection, in case such paper is not paid, so to act as to secure and preserve the liability thereon of all the parties prior to his principal ; and if he fails in this duty, and

thereby·causes loss to his principal, he becomes liable for such loss. But this is not the utmost limit of the agent's duty and liability. He may so act as to charge all the parties to the paper, and yet become liable for a loss occasioned by his negligence. The rule which will measure the diligence which is exacted of a holder of such paper, in order to charge the prior parties, will not always measure the diligence which is required of a collecting agent, in the discharge of his duty to his principal. (1 Daniel on Neg. Instr., § 330.)

Suppose an agent receives for collection from the payee a sight draft. No circumstance can make it his duty, in order to charge the drawer, to present it for payment until the next day. He has entered into no contract with the drawer, is not employed or paid by him to render him any service, and owes him no duty to protect him from loss. What is required to be done to charge the drawer is simply a compliance with the condition attached to the draft, as if written therein; and that condition is in all cases complied with by presentation, demand and notice, on the next day after receipt of the draft. But suppose the agent, on the day he receives the draft, obtains reliable information that the drawee must fail the next day, and that the draft will not be paid unless immediately presented; what then is the duty he owes his principal, whose interests for a compensation he has agreed with proper diligence and skill to serve in and about the collection of the draft? Clearly, all would say, to present the draft at once; and if he fails to do this, and loss ensues, he incurs responsibility to his principal; and yet the drawer would be charged if it was not presented until the next day. Where an agent receives a bill for collection, payable some days or months after date, in order to charge the drawer, he need not present it for acceptance until it falls due; and if he then presents it and demands payment, and protests it, and gives the notice, the drawer is held; and yet, in such a case, he owes his principal the duty to present the bill for acceptance at once, and if he fails in such duty,

and loss ensues to his principal, he becomes liable for such loss. It was so held in *Allen* v. *Suydam* (17 Wend., 368). That case was taken to the Court of Errors, and again appears in 20 Wend., 321, and although the judgment was reversed upon the question of damages, the same rule was laid down as to the duty and liability of the agent. The chancellor said : "If the receiving a bill by an agent, to collect, implies an obligation on his part to take the necessary steps to charge the drawer and indorsers, by protest and notices, in case it is not accepted and paid by the drawee, I do not see why due diligence on the part of the agent, in procuring the acceptance of the drawee without delay, when it may be necessary or beneficial to the interests of the principal, should not also be implied, as it is the duty of a faithful agent to do for his principal whatever the principal himself would probably have done, if he was a discreet and prudent man. Even where the principal is habitually negligent in attending to his own interests, it forms no excuse for similar negligence on the part of his agent." In the same case, Senator Verplanck said : "It seems to be the general commercial law of the civilized world, that when a bill is payable at a day certain, the drawer and indorser are not discharged, if the bill is not presented until the day of payment. Yet it is still the duty of the agent for collection to present the bill for acceptance without delay, and to give immediate notice of refusal to accept." He said further : "The principle is familiar that an agent for pay is bound to use such means, care, skill and precaution, as are adequate to the due execution of his trust. He must use the ordinary diligence of a skillful and prudent man in such affairs."

The rule of diligence applicable to an agent for the collection of negotiable paper, which has been stated, was fully and explicitly recognized in the case of *Smith* v. *Miller*, reported in 43 N. Y., 172 and again in 52 N. Y., 545. In that case the defendants sent to the plaintiffs, for the purpose of paying them for a bill of goods, a draft drawn by them upon Place & Co. of New York. On the same day the

plaintiffs received the draft, they presented it to the drawees for payment, and received their check upon a New York bank for the amount, and delivered up the draft. The check would have been paid if presented on that day, but it was not presented until the next day, and, in the meantime, Place & Co. having failed, the bank refused to pay the check. Suit was then commenced by the plaintiffs against the defendants for the price of the bill of goods, and it was held that the plaintiffs could not recover, upon two grounds: 1. Because they did not protest the draft and give notice of the non-payment thereof to the drawers. 2. Because of their negligence in not presenting the check for payment upon the day they received it, although they had but two hours on that day in which to present it. The first ground does not exist here; but the last does. In 43 N. Y., 176, Judge ALLEN, after speaking of the duty which the payee of a check owes to the drawer, said: "But the duty of the plaintiffs to the defendants is not determined by that rule of commercial law. That rule has respect only to the contract and liability of the parties to the instrument. When a check is taken instead of money, by one acting for others, as was done by the plaintiffs, a delay of presentment for a day, or for any time beyond that within which with proper and reasonable diligence it can be presented, is at the peril of the party thus retaining the check and postponing presentment, as between him and the persons in interest whom he represents." In 52 N. Y., 549, Judge RAPALLO said: "The plaintiffs had received from the drawees of the draft the means of obtaining the amount thereof, and by their own laches these means became unavailable, and the amount was lost both to them and the defendant."

In the cases of *Turner* v. *Bank of Fox Lake* and *Burkhalter* v. *Second National Bank*, the actions were against the drawers of the bills; and the sole question involved was whether they had been properly charged. The case of *Smith* v. *Miller* is not in conflict with them. That was an action against the collecting agent for breach of his duty; and

what was decided in that case, or said in the opinions written therein was in entire harmony with the law as everywhere laid down. The rule as recognized is not unjust or unreasonable or inconveniently uncertain. Here the defendant was bound to present this draft and demand the money thereon. It took a check. That placed in its hands the means of procuring the money at once. It should have presented the check for payment or certification as soon as with reasonable diligence it could, and the delay was at its peril. There is nothing in conflict with these views in *Bank of Washington* v. *Triplett* (1 Peters, 25), and *West Branch Bank* v. *Fulmer* (3 Penn. St. Rep., 402), to which our attention has been called. The question here discussed was not involved in those cases.

All the facts as to the draft and the check are set out in the complaint and are found in detail by the referee, and hence it cannot be said that the complaint and the findings are not sufficient to sustain the recovery, unless difficulty is found in points yet to be considered.

It is said that the proof did not warrant the conclusion that the check would have been paid if presented on the twenty-sixth day of March. It is true, that the account of Culver, Penn & Co. was largely overdrawn on that day. But the bank had been in the habit for a long time of allowing them to overdraw during any day, they depositing collaterals, or making the account good when it was made up the next day. This arrangement was entirely at the discretion of the bank, and had been acted upon for a month or more. Under it the bank paid all the checks of Culver, Penn & Co. drawn on the twenty-sixth, and down to their failure on the twenty-seventh; and among the checks thus paid were some drawn after the one given to the defendant. It was therefore a justifiable conclusion that this check would have been paid if promptly presented. A cause of action was therefore established against the defendant; and the only remaining question is the rule of damages. The recovery was for the whole amount of the draft, with interest.

In 1 Daniel on Neg. Instr. (§ 329), the rule as to damages in such a case is laid down as follows: "The measure of damages which the holder is entitled to recover of the bank, or other collecting agent, who has been guilty of negligence or default in respect to it, is the actual loss which has been suffered. That loss is *prima facie* the amount of the bill or note placed in its or his hands; but evidence is admissible to reduce it to a nominal sum." In *Borup* v. *Nininger* (5 Minn., 523), the same rule is laid down, and it is said: "The defendants may mitigate the damages by showing either the solvency of the maker, the insolvency of the indorser, or that the paper was partially or wholly secured, or any other fact that will lessen the actual loss to the plaintiff; the real loss occasioned by the improper conduct of the defendant being the fact for the jury to arrive at in measuring the plaintiff's damages." In *Allen* v. *Suydam* (*supra*), the judge at the trial charged the jury that as they had no knowledge of what the amount of the damage was, except from the proof of the amount of the draft, they should find a verdict for the plaintiffs for the amount of the draft, with interest. This charge was upheld by the Supreme Court, and the rule was there laid down that the amount of the bill or note, in such a case, is the *prima facie* measure of damages. On account of this charge, the judgment was reversed in the court of errors. (20 Wend. 321.) Two opinions were delivered, one by the chancellor for reversal, and another by Senator VERPLANCK for affirmance. These learned jurists did not differ materially as to the rule of damages, but they differed in its application to the facts of that case. The chancellor, writing the prevailing opinion, laid down the rule thus: "Where there is a reasonable probability that the bill would have been accepted and paid if the agent had done his duty; or where, by the negligence of the agent, the liability of a drawer or indorser, who was apparently able to pay the bill has been discharged, so that the owner of the bill cannot legally recover against such drawer or indorser, I admit the agent, by whose negligence

the loss has occurred, is *prima facie* liable for the whole amount thereof, with interest, as damages; unless he is able to satisfy the court and jury that the whole amount of the bill has not been actually lost to the owner, in consequence of such negligence;" and he claimed that the facts in that case did not clearly show that the loss of the plaintiffs was the whole amount of the bill; and hence he reached the conclusion that the charge of the trial judge was wrong, and that a new trial should be granted, "to the end that no more damages may be recovered than such as a jury may believe it probable, from the evidence adduced, that the plaintiffs may have sustained from the negligence."

When the agent so deals with the draft as to secure and preserve to his principal all his rights and remedies against the prior parties to the bill, he is liable only for the actual or probable damages which his principal has sustained, in consequence of his negligence; and so the rule was recognized to be in *Van Wart* v. *Woolley* (5 Dowl. & Ryl., 374). In *The Bank of Scotland* v. *Hamilton*, cited in *Allen* v. *Suydam*, where the agent by his negligence in not sooner presenting a bill for acceptance, became *prima facie* liable for the whole amount thereof, he was allowed in mitigation of damages a dividend which his principal would be entitled to out of the drawer's estate in bankruptcy.

In all these cases, the negligence of the agent being established, it is a question of damages, and the agent may show, notwithstanding his fault, that his principal has suffered no damages; and the recovery can then be for nominal damages only. He may show, in reduction of the damages, that if he had used the greatest diligence, the bill would not have been accepted or paid, or that his principal holds collaterals, or has an effectual remedy against the prior parties to the bill.

The defendant did not receive the check from the plaintiff and undertake to collect it; and this case must not be disposed of upon that basis. It received the draft for collection; and it was in reference to that that it came under

obligation to the plaintiff to act with diligence. It presented the draft for payment, and for the purpose of paying the same, the drawees delivered to it an order upon a neighboring bank for the amount, and instead of getting the money upon the order at once, as it could have done, it negligently delayed until it could not. It had no more right to delay presenting the order for the money than it would have had to decline, when the draft was presented, to receive the money until the next day, in case the drawees had expressed a willingness to pay then. The *gravamen* of the plaintiff's complaint is that the defendant acted so negligently that it did not get payment of the draft when it had the means under its control, and the power, by the exercise of reasonable diligence, to do so.

But this fault of the defendant, so far as disclosed by the undisputed facts of this case, caused the plaintiff none but nominal damage. The defendant, as shown above, caused the drawer to be charged, and secured and preserved against it all the rights and remedies of the plaintiff; and the presumption, in the absence of proof, is that the drawer was solvent, and responsible for the amount of the draft : (*Ingalls* v. *Lord*, 1 Cow., 240; *Allen* v. *Suydam, supra.*) But in this case we need not rest upon this presumption, as the complaint alleges that the draft could be collected from the drawer, if properly charged. The result is that the plaintiff has recovered against the defendant, as damages for its negligence, the full amount of the draft. But the draft is not by this judgment transferred to the defendant, and it is not subrogated to plaintiff's rights and remedies thereon against the drawer ; and the plaintiff still holds the draft, and, for aught that appears in this case, can enforce it, or has enforced it, for the full amount against the drawer. To justify such judgment, the plaintiff should have shown that the draft was wholly worthless, or that for some reason, the responsibility of the drawer thereof was wholly unavailable to it. The plaintiff is entitled to indemnity, and no more, for the loss caused by the fault of the defendant, and it must show the extent of such loss.

It was said by the learned counsel for the plaintiff, upon the argument before us, that by the law of Pennsylvania the drawer was not charged upon the draft by what was done by the defendant. But that law was not proved; and in the absence of proof, we must assume that the common law rule prevails there which prevails here. It was also stated that the plaintiff had sued the drawer upon the draft and failed to recover, because it was not properly charged. But there is also no proof of that.

Therefore, for the error as to the damages, the judgment must be reversed and a new trial granted, costs to abide event.

All concur, except FOLGER and MILLER, JJ., not voting, and CHURCH, Ch. J., absent.

Judgment reversed.