JOSEPH POVALL, RESPONDENT, *v.* THE DANSVILLE CIGAR MANUFACTURING COMPANY, APPELLANT.

*Laches in presenting a check for payment — failure of the bank — measure of damages — discrimination as to the different ownerships of the moneys in the account against which the check is drawn.*

In an action for money loaned, represented by a promissory note given by the Dansville Cigar Manufacturing Company, of which one Nicholas Johantgen was the treasurer, the defendant interposed the defense of payment, alleging that it had given to the plaintiff's assignor a check against an account kept in the name of Nicholas Johantgen in the First National Bank of Dansville for the amount of the note and interest, which the plaintiff's assignor accepted, and canceled and delivered up the note, and continued to hold the check so given in payment thereof from the 15th day of August, 1887, until the twenty-fifth of that month when the bank failed.

During all of this time the account upon which said check was drawn was good for the amount thereof, by reason of the fact that Johantgen, on August 13, 1887, procured to be discounted by said bank his individual promissory note, in the sum of $500, the amount of which discount was credited in the account against which said check was drawn.

On August 25, 1887, the bank became insolvent and suspended payment, and thereafter Johantgen claimed the right to set off against the deposit standing in his name in the bank, which was the same deposit against which the check in payment of said note was drawn, the amount of the $500 note which had been discounted, and the avails of which had been credited to this account, and such set-off was assented to on behalf of the bank.

The referee, before whom the action was tried, in ascertaining the amount of damages sustained by the defendant, by reason of the neglect of the plaintiff's assignor to present the check for payment, undertook to discriminate between the amount of money in the account, against which this check was drawn, which belonged to the defendant, and the amount thereof which belonged to Johantgen, and limited the amount of the damages to the former sum.

*Held,* that the referee properly decided that the amount of damages to the defendant, which could be set off against the note by reason of such negligence of the plaintiff's assignor, was the actual loss only which the defendant sustained.

That he erred in attempting to distinguish between the respective moneys in the bank account belonging to the defendant and Johantgen, respectively, as the bank account was, in its entirety, intended to meet any commercial paper that might be drawn thereon on behalf of the defendant.

That as Johantgen was not a party to this action his rights, as against the defendant, could not be settled herein.

That the entire bank account should be treated as though it was procured for the express purpose of meeting the check drawn upon the bank for the payment of the indebtedness of the defendant, and that the plaintiff could not escape the consequences of the negligence of his assignor by showing that this fund so provided at the bank did not belong exclusively to the defendant.

Appeal by The Dansville Cigar Manufacturing Company from a judgment of the Supreme Court, entered in the office of the clerk of the county of Livingston on the 7th day of April, 1890, in favor of the plaintiff, after a trial before a referee.

*Charles J. Bissell*, for the appellant.

*F. C. Peck*, for the respondent.

Macomber, J. :

This action is in form brought for moneys loaned and advanced to the defendant by one Mina Prusia, the indebtedness for which was assigned by the latter to the plaintiff.

The answer admits the loan and alleges that the defendant's promissory note, at three months, was given for it, and that after the note became due, and on the 15th day of August, 1887, one Nicholas Johantgen, who was the treasurer of the defendant and authorized to pay its obligations, gave to the plaintiff's assignor his check upon the First National Bank of Dansville, N. Y., for the amount of the note and interest, which the latter accepted, and canceled and delivered up the note. This allegation in the answer was proved at the trial and found by the referee. At the time the check was given, namely, on the 15th day of August, 1887, and continuously until the twenty-fifth day of that month, Johantgen's check, held by Prusia, was good at the bank upon which it was drawn, but the plaintiff's assignor, through negligence, failed to present the same for payment.

The learned referee has found, in accordance with the evidence, that Mina Prusia, on the 16th day of October, 1886, through her husband, acting as her agent, loaned to the defendant the sum of $570 and received the note above mentioned. During all this time Johantgen was not only the treasurer of the defendant; but he had full charge of all its financial affairs, and undertook to, and did, provide means for paying its commercial obligations. The account which was kept by him in the bank, was composed in part of the moneys belonging to the corporation, as between that body and himself, and in part to himself, individually. The arrangement for doing the banking business in this manner was such that the corporation had no account in its own name, but all of its funds stood in the name of Johantgen. Johantgen, in turn, was charged and had agreed to keep the account of the defendant good against all liability.

On the 13th day of August, 1887, Johantgen, for the purpose of raising sufficient money with which to pay the promissory note above mentioned, made his individual promissory note to the order of one John J. Kennedy in the sum of $500, at ten days from the date thereof, which, being indorsed by Kennedy, was on that day discounted by the bank and the proceeds thereof placed to the credit of Johantgen in the account kept for him and the defendant at the bank. This obligation was, in reality, that of the defendant, and the avails thereof became the money of the defendant. Applying this note to Johantgen's credit, the amount thereof and the balance due on the account kept in his name was $667.07.

The referee has undertaken to separate, for the purposes of this action, the interest in this sum of $667.07, owned, respectively, by Johantgen and the defendant.

On the 15th day of August, 1887, Johantgen gave his check upon the bank for $597.65, payable to the order of James C. Prusia, the husband and agent of Mrs. Prusia, and by the agent indorsed and delivered to the principal. On the receipt of this check, which is shown to have been good up to the time of the failure of the bank, the note above mentioned was surrendered and canceled.

After the making and delivery of the check, Johantgen continued to make deposits in this bank and to draw checks thereon up to the 24th day of August, 1887. The bank closed its doors August 25, 1887, and suspended payment, being insolvent, and subsequently thereto a receiver of its assets was appointed, and the affairs of the bank are now in his hands, with no prospect of any appreciable dividends. At the time of the bank's failure the amount to the credit of Johantgen was $914.84. Here, again, the referee has undertaken to separate and divide the respective interests of Johantgen and the defendant to this sum of $914.84, finding that $563.47 thereof belonged to the defendant, and $351.37 to Johantgen.

The referee has found as a fact that the omission on the part of Mina Prusia to present the check for payment on or before the 22d day of August, 1887, was negligence on her part. In ascertaining the amount of damages to the defendant by reason of such negligence, he has very properly decided that the actual loss only which the defendant sustained can be recouped against the claim of the plaintiff. (*First Nat. Bk.* v. *Fourth Nat. Bk.*, 77 N. Y., 329, and cases there cited.)

At the time of the failure of the bank there was in its possession the note of Johantgen for $500, which was subsequently by him presented to the receiver with a verified claim against the bank, together with a demand that the note, then amounting to $501.08, should be deemed paid by deducting that amount from the credit standing on the books in his favor of $914.84, and the balance only be regarded as the amount due him by the bank. This claim was allowed by the receiver and the five hundred dollar note was by him delivered up to Johantgen, the amount thereof being set off by the receiver against such balance of $914.84 and the sum of $413.76 credited by the receiver as the balance due Johantgen by the bank. The act of Johantgen in thus procuring a set-off was done in pursuance of the general authority and power which he possessed of acting for the defendant, and not through any special instructions given him at this particular time. The only question, under the facts appearing in the case, which are substantially undisputed, relates to the amount the defendant lost by the failure of Mrs. Prusia to present the check for payment.

After the application of Johantgen's credit to the payment of the note by the receiver there remained of his credit $413.76, which was, by the sum of $183.89, less than the amount of the check. If the defendant can recoup in this action the amount of Johantgen's loss, the last-mentioned sum would have been the amount of plaintiff's recovery, as the learned referee concedes, but he has been unable to see any reason why the defendant can claim any more of Mrs. Prusia than defendant's own liability was to Johantgen's. It is here where the fallacy of the learned referee appears. Upon the findings, which are supported by substantially undisputed evidence, it is impossible to separate the account at the bank and apportion one part of it to Johantgen and the other part to the defendant. The whole course of the dealings between the defendant and Johantgen shows that, for the purpose of meeting the commercial paper used in the business of the defendant, there had been provided a fund at the bank, partly that of Johantgen and partly that of the defendant; and that bank account, which had always stood in the name of Johantgen, was intended to meet any commercial paper which might be issued in behalf of the

defendant.   The rights between the defendant and Johantgen could not be settled in this action ; Johantgen is not a party.   The entire fund at the bank must be treated as though it was procured for the express purpose of meeting the checks drawn upon that bank for the payment of the indebtedness of the defendant.   The plaintiff cannot escape the consequences of negligence of his assignor by showing that this fund, so provided at the bank, did not belong exclusively to the defendant ; it is sufficient for the determination of her rights, and those of her transferree, to say that it was amenable to the checks drawn by Johantgen.

For the purpose of determining the amount of plaintiff's damages, the account at the bank is not separable between the defendant and Johantgen.   Johantgen had a right to rely upon the fact that the check which he had given the plaintiff's assignor had been collected, and the account at the bank, provided by him for this and other purposes of the defendant, had been by so much lessened.

By the failure of the plaintiff's assignor to present the check, there was lost to the fund at the bank, provided by the defendant through its authorized agent, Johantgen, the sum of $413.76, instead of the sum of ninety-six dollars and fifty-seven cents, as found by the referee.   This amount should be deducted from the sum claimed by the plaintiff.   A simple computation shows the balance to be $183.89, with interest from the 25th day of August, 1887, instead of the sum of $501.08 and interest from that date, for which judgment was directed by the referee.

It follows, therefore, that the judgment should be reversed, with costs to the appellant and a new trial granted, unless the plaintiff stipulates to reduce the judgment as above indicated, in which event the judgment, so reduced, is affirmed, without costs of this appeal to either party.