## Maier-Lavaty Company, Appellee, v. Aetna State Bank, Appellant.

### Gen. No. 31,991.

1. NEGOTIABLE INSTRUMENTS—*bank discounting notes as not a purchaser.* A bank in discounting promissory notes for a depositor who is not indebted to the bank, and placing the proceeds to the credit of his account, does not become a purchaser of the notes.

2. NEGOTIABLE INSTRUMENTS—*when default of bank in not presenting notes for payment is not waived.* Where the holder of promissory notes discounts them with a bank which places the proceeds to the credit of his account and agrees to collect the notes, a failure of the bank to present the notes to the maker for payment at maturity is not waived by the holder taking up the notes and paying the bank the face amounts on notice of nonpayment by the maker, where the bank demanded that the notes be taken up and the holder did not know that presentment had not been made to the maker.

3. DAMAGES—*prima facie case as to amount of damages in action by holder of note against collecting bank for negligence.* In an action by the holder of promissory notes against a bank for damages from its negligence in not presenting the notes to the maker for payment at maturity, and thereby discharging an indorser, the introduction of the notes in evidence with a showing that they had not been paid make out a prima facie case that plaintiff has been damaged to extent of the face amount of the notes with interest.

4. MUNICIPAL COURTS—*admissibility of evidence when defense not pleaded as required by rule of court.* In an action in the municipal court of Chicago by the owner of promissory notes against a bank for damages through its negligence in not presenting the notes to the maker for payment at maturity, and thereby discharging an indorser, evidence by the defendant that the indorser was insolvent is inadmissible where such defense has not been pleaded as required by Rule 15 of the court.

Appeal by defendant from the Municipal Court of Chicago; the Hon. C. F. McKINLEY, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1927. Affirmed. Opinion filed January 31, 1928.

DENT, DOBYNS & FREEMAN, for appellant.

CHARLES W. STIEFEL, JR., for appellee.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On April 21, 1927, in a first-class action in contract, there was a finding and judgment against defendant for $1,518.44, and this appeal followed.

Plaintiff, in its statement of claim filed April 24, 1926, alleges in substance that it is the legal holder and owner of three promissory notes, executed by the DeLuxe Cab Company, a corporation, each dated

March 28, 1925, each for the sum of $475.90, and payable to plaintiff's order respectively in six, seven and eight months after date, with interest at 6 per cent per annum; that each note, prior to its delivery to plaintiff by the cab company, bore the indorsement of C. J. Michelsen; that on April 6, 1925, plaintiff indorsed and delivered the three notes (together with four other notes) to defendant (plaintiff's banker) and the same were "duly discounted" and the proceeds credited to plaintiff's account with defendant; that at the time the notes were discounted, and thereafter and before their maturity, plaintiff directed defendant to collect them and it agreed so to do, but, at the respective maturities of the notes, it "failed and neglected to present the same for collection and payment to the maker" (the cab company); that by reason thereof, and by virtue of the provisions of the Illinois Negotiable Instruments Law, Cahill's St. ch. 98, said Michelsen was discharged from his liability as indorser and plaintiff has been unable to collect the amount of the notes from him; that the maker of the notes (the cab company) is financially irresponsible; that all moneys received by plaintiff from defendant and credited to plaintiff's account with defendant, at the time of said discounting, have been repaid by plaintiff to defendant; and that defendant is indebted to plaintiff in the sum of $1,518.44. It appears that this sum is the aggregate of the three notes, $1,427.70, plus accrued interest.

In defendant's amended affidavit of merits, sworn to by Donald W. Riley, its vice president, it admits that on April 6, 1925, the three notes were delivered by plaintiff to it, but denies that they were "discounted" at that time; avers that it "purchased" them for value from plaintiff and "credited the proceeds to the account of plaintiff," and that defendant became "a bona fide holder and owner in due course and before maturity" of them; denies that either at the time of

their delivery, or subsequently, plaintiff directed it to collect them or that it agreed so to do, or that at their respective maturities it failed and neglected to make presentment of them to the maker; avers that on September 28, 1925 (when the first of the notes matured), and continuously thereafter until November 30, 1925, the maker was insolvent and that the indorser, Michelsen, "was the president of said maker"; avers that, when each of the notes matured, plaintiff had knowledge of the failure of the makers to pay them, and that, upon the respective dates, plaintiff "bought the notes from defendant * * * paying to it the full face value thereof, together with interest, and released defendant from all or any liability"; and further avers that, after plaintiff had so bought the notes, it commenced a suit in the municipal court against Michelsen, wherein it sought to charge him as indorser upon the notes, and that the court "rendered a judgment against the plaintiff in that suit."

On the trial the evidence disclosed that on April 6, 1925, defendant, at plaintiff's request, discounted the three notes, together with four others, before their maturities and for their face value, aggregating $2,855.30, and credited plaintiff's deposit account with said aggregate amount, and also made "discount" charges aggregating $74.21, on plaintiff's said account in the name of "Jerome Ott, Tailors," which was the name of a branch of plaintiff's tailoring business in Chicago; that when the three notes in question were exhibited to the bank to be discounted they bore the indorsement of Michelsen and that below his signature they then were indorsed by plaintiff; that, at the bank's request and for further security to it, L. Sonnenschein, vice president of plaintiff, then added his signature as an indorser; that when the three notes, respectively, matured (viz, September 28, October 28 and November 28, 1925), the defendant bank did not make presentment of them to the maker (the cab com-

pany); that none of them was paid by the maker, which was insolvent; that in each instance the bank notified plaintiff of the nonpayment, and demanded of it that it take up the notes, which it immediately did, giving its checks to the bank for the respective face amounts, and plaintiff again became, and still is, the holder of them; that at these respective times plaintiff had on deposit in the bank to its credit balances of more than $5,000; and that plaintiff, after taking up the notes, brought suit upon them against the indorser, Michelsen. Plaintiff's attorney, Stiefel, testified to the effect that in January and February, 1926, he had several conversations with Riley, defendant's vice president; that in January, when he was preparing for the trial of plaintiff's said suit against Michelsen, he told Riley to give him the name of the boy or clerk who (as Riley said) had presented the three notes to the cab company and that Riley said he would do so; but that subsequently, early in February, Riley came to his office and said to him (Stiefel): "I think I pulled a boner; I have not been able to find the boy who presented those notes."

We think that the evidence sufficiently shows that, when the three notes were discounted, it was understood that the bank would take all necessary steps to collect them; that it then undertook the duty of making presentment of them to the maker at their respective maturities; that it negligently failed to perform this duty, and that as a result Michelsen, the indorser on the notes, was discharged from liability as such. When the discounting transaction occurred, plaintiff made use of a deposit slip written out by Riley, showing the amounts of the several notes and the aggregate sum to be credited to plaintiff's account with the bank. On this slip is the printed statement: "Right is reserved, and the bank is authorized to forward items for collection or payment direct to the drawee or payor bank * * * and to receive payment in drafts drawn

by the drawee   *   *   *,   and, except for negligence, this bank shall not be liable for dishonor of the drafts so received in payment, nor for losses thereon.'' In 1 Daniel on Neg. Inst., 6th Ed., § 327, it is said: ''It is the duty of the bank, as soon as the bill, note, or check is placed in its hands for collection, to take the appropriate steps necessary to its prompt payment or prompt acceptance, by making presentment for acceptance without delay, and presentment for payment at maturity. And if the instrument be not duly accepted or paid, the bank must take all necessary steps to fix the liability of the drawer,   *   *   *   If the bank fail in any of these duties, it becomes immediately liable in damages to the holder.'' And, in speaking of the implied undertaking to make demand and protest, the author states (§ 328): ''The theory of this rule is, that the receipt by the bank of negotiable paper, deposited for collection, forms an implied undertaking to make the demands and protests, and give the notices required by law or mercantile usage, for the perfect protection of the holder's rights against all previous parties,   *   *   *'' (See, also sections 66 and 70, Illinois Neg. Inst. Law, Cahill's 1927 St. ch. 98, ¶¶ 86 and 91.)

In urging a reversal of the judgment, counsel for the bank contend that it ''bought'' the notes of plaintiff on April 6, 1925, then paying their full face value, and became a holder of them in due course, and, hence it was under no obligation to make presentment of them at their respective maturities to the maker. We cannot agree. The evidence does not disclose that the bank purchased of plaintiff the notes outright, but rather that it discounted them. When at their respective maturities they were not paid by the maker, the bank in each instance demanded of plaintiff that it immediately pay back the moneys which had been advanced by the bank, and this plaintiff immediately did. In *Warman v. First Nat. Bank of Akron, Ohio,* 185 Ill.

60, 64, it is said: "We think the authorities fully sustain the proposition that a bank does not become a purchaser of negotiable paper by discounting the same for one not indebted to it at the time, and merely placing the amount which the assignor is to receive to his credit by way of deposit." And, again in that case, quoting from 4 Amer. & Eng. Encyc. of Law (2nd Ed.), at page 298, it is said (p. 65): "Where a bank discounts paper for a depositor who is not in its debt, and gives him credit upon its books for the proceeds of such paper, it is not a *bona fide* holder for value, so as to be protected against infirmities in the paper, unless, in addition to the mere fact of crediting the depositor with the proceeds of the paper, some other and valuable consideration passes." And, in our opinion, under the facts and circumstances in evidence, there is no merit in counsel's further contention that, assuming that the bank was in duty bound to make presentment to the maker of the notes at their respective maturities and that it negligently failed in this duty, plaintiff has no claim for damages against the bank because, after the maker had failed to pay the notes and the bank had notified plaintiff of that fact, plaintiff voluntarily took up the notes and paid to the bank their face amounts, and thereby "waived" the bank's said default. Plaintiff's taking up of the notes was not done voluntarily but upon the bank's proper demand and, when it took them up respectively, it did not then know that presentment had not been made to the maker.

Counsel also contend that there is no evidence of the actual damages sustained by plaintiff by reason of the bank's default. In 1 Daniel on Neg. Inst., § 329, it is said: "The measure of damages which the holder is entitled to recover of the bank, or other collecting agent, who has been guilty of negligence or default in respect to it, is the actual loss which has been suffered. That loss is *prima facie* the amount

of the bill or note placed in its or his hands; but evidence is admissible to reduce it to a nominal sum. 'The defendant may mitigate damages by showing either the solvency of the maker, the insolvency of the indorser, or that the paper was partially or wholly secured, or any other fact that will lessen the actual loss to the plaintiff; the real loss occasioned by the improper conduct of the defendant being the fact for the jury to arrive at in measuring the plaintiff's damages.' " (Citing *Borup v. Nininger,* 5 Minn. 523; see also *First Nat. Bank v. Fourth Nat. Bank,* 77 N. Y. 320, 328; *Merchants' State Bank v. State Bank of Phillips,* 94 Wis. 444, 446.) We think that, by introducing the notes and showing that they had not in any part been paid, plaintiff made out a prima facie case as to amount of damages suffered, viz, the face of the notes, plus interest. The maker admittedly was insolvent and unable to pay them. And as to the question of the insolvency of the indorser, Michelsen, it was not alleged as a defense in defendant's affidavit of merits that he was insolvent. The only allegation in said affidavit as to said indorser was that he "was the president" of the insolvent maker of the notes. Furthermore, said affidavit disclosed the fact that in a suit brought by plaintiff against said indorser the court had "rendered a judgment against the plaintiff in that suit."

Counsel further contend that the court erred "in refusing to allow the defendant to show that the indorser, Michelsen, was insolvent at the time of his alleged discharge from liability as an indorser." One of the two witnesses called by defendant was C. J. Michelsen. He testified that he was in the wholesale florist business; that prior to July 21, 1925, he had been the president of the DeLuxe Cab Company; that while acting as such he personally had indorsed the three notes of that company; and that he ceased having any connection with the company on July 21, 1925,

when its business was "turned over to a creditors' committee." He was then asked: "Q. What was your financial condition at that time as a result of the company going into the hands of a receiver; what happened to you?" Upon objection being made to the question, defendant's attorney stated that plaintiff was claiming that the bank, because of its negligence, had discharged Michelsen as the indorser on the notes, and that he proposed to show that Michelsen was insolvent at the time, so that it would appear that plaintiff "was not hurt and had not suffered any loss" by the fact of Michelsen's discharge as indorser. Thereupon plaintiff's attorney made the further objection to the question and to the line of inquiry that it presented a defense not set up in defendant's pleadings. Thereupon defendant's attorney stated in substance that, while he was aware that Michelsen's insolvency had not been set up in the affidavit of merits as a defense, still it was proper to be shown in mitigation of plaintiff's damages. The court sustained the objection to the question and to the line of inquiry, saying that if Michelsen were insolvent that "would be a question of defense, not a question of damages." Among the rules of the municipal court is Rule 15, entitled "Pleadings," in part as follows:

"The following rules of pleading shall be observed in framing the statement of claim, affidavit of merits, reply, * * * and such other pleadings as may be ordered filed in cases of the first and fourth classes:

\*        \*        \*        \*        \*        \*        \*        \*

"(n) All such grounds of defense or reply as would raise issues of fact not arising out of the preceding pleadings must be specifically pleaded, including fraud, Statute of Limitations, release, * * * and all other matter by way of confession and avoidance.

"(o) It shall not be sufficient to deny generally the grounds for relief alleged in the statement of claim, set off or counter-claim, but each party must deal

specifically with each allegation of fact of which he does not admit the truth; but the court may grant leave, where it may be just, to plead a general denial.''

In the present case, we think that the question, whether, at the respective times the three notes matured, Michelsen, the indorser, was insolvent, and unable to pay them, was one of fact to be determined by evidence. If he were in fact insolvent it presented a good defense to plaintiff's statement of claim, in that it would show that plaintiff was not injured by his discharge as indorser occasioned by defendant's default in not making presentment to the maker of the notes. By the rules, defendant was required to plead that defense. And in the present case plaintiff justly was entitled to have notice of such defense so that it might on the trial be prepared to meet by contrary evidence, if it could, any evidence introduced by defendant tending to show Michelsen's insolvency. We think that under the pleadings and the rules of the municipal court (which are contained in the present transcript duly certified) the trial court did not err in refusing to admit the offered evidence as to Michelsen's claimed insolvency.

Finding no reversible error in the record, the judgment of the municipal court is affirmed.

*Affirmed.*

BARNES, P. J., and SCANLAN, J., concur.